UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

THE ANDERSON GROUP, LLC and
GAIL ANDERSON,

                Plaintiffs,

-against-                            Civil Case No.: 05-cv-1369 GLS/DRH

CITY OF SARATOGA SPRINGS; MICHAEL
LENZ, individually and in his official capacities
as Mayor of Saratoga Springs and Saratoga
Springs City Council member; SARATOGA
SPRINGS CITY COUNCIL; THOMAS
CURLEY, MATTHEW MCCABE, THOMAS
MCTYGUE, and STEPHEN TOWNE, individually
and in their official capacities as Saratoga Springs
City Council members; SARATOGA SPRINGS
PLANNING BOARD; and LEWIS BENTON,
ROBERT BRISTOL, ROBERT ISRAEL,
WILLIAM MCTYGUE, NANCY OHLIN, and
LOU SCHNEIDER, individually and in their
official capacities as Saratoga Springs Planning
Board members,

                Defendants.

---

**REPLY MEMORANDUM OF LAW TO PLAINTIFFS' OPPOSITION AND IN FURTHER
SUPPORT OF DEFENDANTS' MOTION FOR JUDGEMENT ON
THE PLEADINGS PURSUANT TO FRCP 12(c)**

---

                                        GIRVIN & FERLAZZO, P.C.
                                        Attorneys for Defendants City of
                                        Saratoga Springs, *et al*
                                        Office and P.O. Address
                                        20 Corporate Woods Boulevard
                                        Albany, New York 12211
                                        (518) 462-0300

(Gregg T. Johnson, Esq., of Counsel)
(Scott P. Quesnel, Esq., of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................. 1

ARGUMENT ................................................................ 1

    POINT I

        PLAINTIFFS' ARGUMENTS FAIL TO DEMONSTRATE
        THAT DEFENDANTS ARE INDIVIDUALLY AMENABLE
        TO SUIT .................................................. 2

    POINT II

        DEFENDANTS ARE NOT SUBJECT TO SUIT
        UNDER HUMAN RIGHTS LAW § 296.5 ........................... 5

    POINT III

        PLAINTIFFS FAILED TO PRESENT THE COURT
        WITH A JUSTICIABLE CONTROVERSY .......................... 7

    POINT IV

        *BURFORD* ABSTENTION IS APPLICABLE
        TO PLAINTIFFS' FEDERAL CLAIMS ............................ 9

CONCLUSION ............................................................. 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Acevedo-Cordero v. Cordero-Santiago,*
958 F.2d 20 (1st Cir. 1992) .................................................................................................. 3

*Acierno v. Cloutier,*
40 F.3d 597 (3d Cir. 1994) ................................................................................................... 3

*Bogan v. Scott-Harris,*
523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) ............................................................ 3

*Forrester v. White,*
484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) .......................................................... 3

*Harhay v. Town of Ellington Board of Education,*
323 F.3d 206 (2d Cir. 2003) ................................................................................................. 3

*Herrington v. County of Sonoma,*
857 F.2d 567 (9th Cir. 1988) ................................................................................................ 8

*Hill v. City of New York,*
45 F.3d 653 (2d Cir. 1995) ................................................................................................... 3

*Meyer v. Holey,*
537 U.S. 280, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) ........................................................ 7

*Pomponio v. Fauquier County Board of Supervisors,*
21 F.3d 1319 (4th Cir. 1994) .............................................................................................. 10

*Sunrise Develop. Inc. v. Town of Huntington,*
62 F.Supp.2d 762 (E.D.N.Y. 1999) ..................................................................................... 9

*Sylvia Development Corp. v. Calvert County,*
48 F.3d 810 (4th Cir. 1995) ................................................................................................ 10

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,*
473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) ........................................................ 8

### STATE CASES

*McMinn v. Town of Oyster Bay,*
105 A.D.2d 46, 482 N.Y.S.2d 773 (2d Dept. 1984) ............................................................ 6

## FEDERAL STATUTES

42 U.S.C. § 3604, *Fair Housing Act* ............................................................................................7

F.R.C.P. 12(c) ..................................................................................................................................1

## STATE STATUTES

*N.Y. Exec. Law* §296.5 ..................................................................................................................5

*N.Y. Gen. Mun. Law* §50-e ...........................................................................................................7

*N.Y. Statutes* §76 ...........................................................................................................................5

## PRELIMINARY STATEMENT

Defendants, by and through their attorneys, Girvin and Ferlazzo, P.C., submit this Reply Memorandum of Law in Response to Plaintiffs' Opposition and in further Support of their Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure (hereinafter "FRCP") 12(c).

## ARGUMENT

While Defendants are cognizant of the early stage of this litigation, the provocative rhetoric offered by Plaintiffs in continued support of their shotgun litigation approach warrants a close look at the entirely speculative nature of Plaintiffs' allegations and liability theory. Contrary to the arguments Plaintiffs' Counsel offers about so called "racial segregation",[1] there is not a single allegation in the Plaintiffs' Complaint that the possible race of any potential resident of their proposed high-density development project was discussed or considered by any individual Defendant. While Plaintiffs' FHA theory against the City, as speculative as it may be, might be sufficient at this early stage of the litigation, the absence of any allegations in Plaintiffs' Complaint should prevent Plaintiffs' from having license to effectively call ten public officials racial bigots based upon nothing more than their race and Plaintiffs' frustration over their unsuccessful state court litigation strategy.

---

[1] The irony of this case is that the race theory Plaintiffs' strategically offer this Court in order to invoke the Fair Housing Act (hereinafter "FHA") is premised upon bogus racial stereotyping. Plaintiffs' theory posits that their strategic inclusion of a small percentage of "workforce affordable" housing in their high density residential development somehow means Plaintiffs were proposing housing specifically for African Americans, (as distinguished from other minority groups and the tens of thousands of area residents who be income-qualified for "workforce affordable" housing). Plaintiffs' theory further speculates that each and every Defendant concluded that the inclusion of a "workforce affordable" housing component signaled the arrival of African American residents. Finally, Plaintiffs' theory speculates even further that the legislative actions of the City Council and Planning Board's Advisory Opinion were specifically motivated by unspoken, speculative fears about a racial issue that is itself entirely speculative. Simply reciting Plaintiffs' liability theory illustrates how outrageously remote it truly is.

1

## POINT I
## PLAINTIFFS' ARGUMENTS FAIL TO DEMONSTRATE THAT
## THE DEFENDANTS ARE INDIVIDUALLY AMENABLE TO SUIT

Plaintiffs have failed to refute Defendants' argument that the individual members of the City Council and the Planning Board have no authority, as individuals, to act outside of the collective consciousness of the bodies they represent, and thus cannot be individually liable. Under the factual allegations of the Plaintiffs' Complaint, the only basis for Plaintiffs' claims against the individual Defendants are allegations of inaction or action taken while participating in the formal processes of the Planning Board and the City Council (Complaint, ¶¶41-46). The Complaint does not contain a single factual allegation that any individual Defendant used his or her power in an abusive manner. Further, there is not a single allegation that any individual defendant possessed any power or authority to affect (1) the zoning of the SWAD or (2) Plaintiffs' application for a special use permit. Moreover, Plaintiffs fail to identify a single case in which an individual public official who simply cast a vote on an issue before a collective body was held personally liable under the Fair Housing Act, 42 U.S.C. § 3604.[2] While Plaintiffs devote part of their opposition arguments to the issue of legislative immunity, Plaintiffs fail to address the fact that they are suing eleven individuals who did not possess the power, nor have been alleged to have taken actions, to make a housing accommodation "otherwise unavailable".

Even if a public official could be individually liable simply for voting through a public body, the Planning Board Members and City Council Members are entitled to legislative immunity for their actions. Plaintiffs' concede that in addressing legislative immunity, the Court must take a functional

---

[2] Such a lack of authority can presumptively be attributed to the fact that courts are unwilling to subject members of collective bodies to personal liability for their votes, as that such positions would thereafter be entirely undesirable.

2

approach, examining the nature of the actions they performed. *See Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995). While there is no clear consensus among the Circuits as to what precisely constitutes a "legislative act", most Circuits agree that the inquiry should focus on whether the challenged conduct relates to a general policy or overall plan versus particularized acts or acts that are executive in nature involving monitoring and administering. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003); *see also Acierno v. Cloutier*, 40 F.3d 597, 611 (3d Cir. 1994).

Initially, Plaintiffs attempt the obscure the inherently legislative nature of the Council Members and Planning Board Members' actions by attributing improper motives to their actions. [3] Plaintiffs claim that the City Council's decision to re-zone the SWAD was "clearly directed at the Andersons, and specifically at preventing them from constructing Spring Run Village" (Pl's Memorandum of Law, p. 15). Plaintiffs advance the argument that a decision directed at a specific individual rather than the public at large discharges any immunity attached to a local legislator, citing the First Circuit decision in *Acevedo-Cordero v. Cordero-Santiago*, 958 F.2d 20, 23-34 (1st Cir. 1992). Plaintiffs go on to cite a series of cases, most of which are outside of the land use context, in which those Courts determined whether the decision to enact legislation was directed at affecting an individual as opposed to promoting a policy (Pl's Memorandum of Law, p. 14-15) (citations omitted). While the Second Circuit has not expressly adopted this approach, the courts in those cases were faced with legislation that, while facially neutral, had the sole purpose of harming a single group or individual against whom the legislator held some type of animus. In this case,

---

[3] The U.S. Supreme Court has stated that "whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 973, 140 L.Ed.2d 79 (1998).

3

despite Plaintiffs' presumptions which are wholly unsupported by factual allegations, the Council Members did not make decisions with respect to the SWAD based on Plaintiffs' proposal of the Spring Run Village. Plaintiffs ignore the fact that the City Council is charged with the responsibility of considering the best interest of all citizens and businesses within the City, not simply the interests of the owners of the land at issue. (*See* Ex. "A" to Quesnel Aff. supporting Defendants' Rule 12(c) Motion). Further still, Plaintiffs' unsubstantiated assertions are simply at odds with the fact that the re-zoning of the SWAD re-zoned land owned by individuals other than Plaintiffs. As the Third Circuit stated, "a blind adherence to the principle that legislation affecting a single property owner is administrative rather than legislative would eviscerate the overarching aim of protecting local legislators from suit under the absolute immunity doctrine when they make broad policy decisions to further the communities in which they serve." *Acierno v. Cloutier*, 40 F.3d 597, 611 (3d Cir. 1994) (where a city council was protected by absolute immunity for enacting a down-zoning ordinance affecting the plaintiff's property). Unlike a zoning decision that effects only one person's land, the City Council's decision had prospective implications that reached beyond the particular tract of land owned by Plaintiffs and affected each division of land in the Comprehensive Plan near and around the SWAD.

With respect to the Planning Board Members, although the *Planning Board* was asked by Plaintiffs to pass on an application for a special use permit which could only affect the use of Plaintiffs' land, Plaintiffs again omit from their argument several critical facts. First, the Planning Board made no decision with respect to Plaintiffs' application as a result of Plaintiffs' failure to

fully exhaust the *application* process.[4] Second, the Planning Board Members act legislatively as they consider land use proposals in light of the City's land use policy, the City's Comprehensive Plan, and the overall needs and well being of citizens and business residing and operating in the City. As the Planning Board Members must perform a task far greater in scope than simply considering the merits of Plaintiffs' special use permit application, the Planning Board Members therefore substantively act in a legislative capacity, even though the Planning Boards' ultimate determination, had they made one in this case, would have only affected the *use* of Plaintiffs' land.

## POINT II
## DEFENDANTS ARE NOT SUBJECT TO SUIT UNDER HUMAN RIGHTS LAW § 296.5

Defendants are not subject to claims under N.Y. Human Rights Law §296(5) for decisions affecting the zoning of the SWAD. Plaintiffs' have not alleged a single fact to show that Defendants are "an owner, lessee, sub-lessee, assignee or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof" as required under Human Rights Law § 296(5). Additionally, no Defendant "refused to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race." The statutory language used in Section 296(5) is clear. The New York State legislature has stated that "[w]here words of a stature are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation." N.Y. Statutes §76. Plaintiffs effectively concede

---

[4] Although Plaintiffs continue to assert that their application for a special use permit was "denied", that is a factually incorrect statement. Based on the Planning Board Meeting minutes certified by Plaintiffs as "true and accurate", the Planning Board met on February 2, 2005 to consider Plaintiffs' application. When the Board noted that the applicant had not appeared, the application was neither granted or denied, but considered "withdrawn" (Pl's Memorandum of Law, Ex. "A"). As such, Plaintiffs cannot provide the Court with a decision from the Planning Board denying their application, and therefore cannot show that there was a decision directed at a specific individual.

through their resort to novel statutory construction that Section 296(5) would not include Defendants. The Court however need not resort to statutory construction as the clear language Section 296(5) demonstrates that the Legislature intended the provision to apply to *only* those individuals specifically enumerated. The Complaint does not and cannot allege that any Defendant was an owner, lessee, sub-lessee, assignee or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, and therefore Plaintiffs' claims under Section 296(5) must be dismissed.[5] Additionally, even if a municipal entity such as the City Council or the Planning Board were covered by the statute, Plaintiffs' failure to allege that Defendants engaged in any of the conduct prohibited by Section 296(5) dooms Plaintiffs' state law claims.

Without any support, Plaintiffs conclusorilly state that Defendants' power to prevent the sale or rental of housing to minority residents by preventing its construction brings those officials within the New York State Legislature's definition of persons' having the right to sell, rent or lease a housing accommodation (Pl's Memorandum of Law, p. 21). Plaintiffs offer legislative history supporting Section 296(5) in an attempt to interpret what is otherwise clear statutory language.[6]

---

[5] While there is a single case in which the Appellate Division heard claims asserted against a municipal zoning entity under Section 296(5), *McMinn v. Town of Oyster Bay*, 105 A.D.2d 46, 50, 482 N.Y.S.2d 773 (2d Dept. 1984), the case in no way addressed the argument raised by Defendants through this motion, and the plaintiff's claims under Section 296(5) were ultimately dismissed. Plaintiffs fail to cite a single case in which a court held a municipal entity responsible for zoning decisions liable under Section 296(5).

[6] The Language of the Fair Housing Act has been subject to interpretation as a result of the prohibition against *any* individual or entity making property "otherwise unavailable". 42 U.S.C. § 3604(a). In contrast, Section 296(5) clearly prohibits discrimination from a definitive group of individuals, and does not contain ambiguous language with the potential for interpretation.

This Court need not and must not engage in any speculation as to the Legislature's intent as the Legislature specifically set forth those entities that are subject to Section 296(5).[7]

Even if Defendants were subject to a claim under Section 296(5) - which they are not - Plaintiffs failed to comply with the notice of claim requirement in General Municipal Law §50-e. The notice of claim requirement under General Municipal Law §50-e applies to "any case founded upon tort". As stated in Defendants motion pursuant to FRCP 12(c), the U.S. Supreme Court has concluded that "an action brought for compensation by a victim of housing discrimination [under the FHA] is, in effect, a tort action." *Meyer v. Holey*, 537 U.S. 280, 285, 123 S.Ct. 824, 828, 154 L.Ed.2d 753 (2003). Plaintiffs state in their opposition brief that "Section 296 [of New York's Human Rights Law] has been certified by the Department of Housing and Urban Development (HUD) as 'substantially equivalent' to the federal Fair Housing Act. 42 U.S.C. § 3610" (Pl's Memorandum of Law, p. 22). By Plaintiffs' own submission, the Court should consider Plaintiffs' claims under the Human Rights Law tort claims as they are substantially equivalent to the Fair Housing Act claims which the U.S. Supreme Court has stated are, in essence, tort claims. Plaintiffs' failure to file a notice of claim with Defendants further warrants the dismissal of Plaintiffs' claims under Human Rights Law § 296(5).

## POINT III
## PLAINTIFFS FAILED TO PRESENT THE COURT WITH A JUSTICIABLE CONTROVERSY

---

[7] Plaintiffs' assertion that there is room for interpretation within this clear statute is simply at odds with Article 15 of the Human Rights Law generally. First, Section 296 has been amended nine times over the course of more than fifty years. Section 296(5) has been amended four times since 1999. If the meaning of the statute were ever in question, the Legislature had ample opportunity to resolve any ambiguities, but apparently has not seen any need to do so. Additionally, Section 292 of the Human Rights Law contains more than thirty definitions for terms used in Article 15. As none of the terms used in Section 296(5) are defined in Section 292, the terms in Section 296(5) must be given their common parlance meaning.

Defendants assert that this Court cannot entertain jurisdiction over the instant matter as Plaintiffs failed to present the Court with a ripe controversy. "In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication of administrative action." *Herrington v. County of Sonoma*, 857 F.2d 567, 568 (9th Cir. 1988). Plaintiffs failed to show that the "initial decisionmaker (*sic*) has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

Plaintiffs' assertion that the Defendants re-zoned the *Andersons'* property is a misstatement of the facts, as the re-zoning of the SWAD re-zoned the land of Plaintiffs as well as several other City residents. Although this was a final decision by the City Council, the decision to re-zone the SWAD did not inflict an actual, concrete injury upon any land owner in the SWAD, as they remain fully capable of utilizing their land for purposes consistent with an RR-1 classification or applying for a variance, which Plaintiffs elected not to do. Plaintiffs state that after their property was re-zoned, "the Planning board... without any action by the Andersons or any consultation with the Andersons, unilaterally deemed the application 'withdrawn'"(Pl's Memorandum of Law p. 12). This statement contradicts Plaintiffs' Complaint (Complaint, ¶47) and various statements throughout Plaintiffs' opposition brief that its application was "denied" by the Planning Board (Pl's Memorandum of Law, pp. 13, 15, 17). Additionally, it is not the responsibility of the Planning Board to consult with an applicant or otherwise aid them in the application process. Although Plaintiffs contend that they "vigorously pursued their goal of constructing affordable housing units on their property for almost two years and have never abandoned those efforts", (Pl's Memorandum of Law p. 12), Plaintiffs simply chose not to appear for the February 2, 2005 Planning Board

8

meeting at which their application would have been considered. Whether the application would have been granted or denied is irrelevant to whether the decisionmaker arrived at a definitive position on the issue, which the Planning Board did not.

Plaintiffs now assert through a footnote that any attempt to pursue their original application to fruition, resubmit their application or seek a use variance would have been an effort in futility (Pl's Memorandum of Law, 13, Fn. 4). While Plaintiffs' argue that they were not required to exhaust their administrative remedies prior to bringing this action, Plaintiffs nonetheless had available to them the option of seeking a use variance which, had Plaintiffs been successful, would have obviated the need for the instant action. Defendants do not demand that Plaintiffs exhaust its administrative remedies, but rather ask the Court to grant Defendants the opportunity to render a final decision before they be hailed into a court of law.[8]

## POINT IV
## *BURFORD* ABSTENTION IS APPLICABLE TO PLAINTIFFS' FEDERAL CLAIMS

Plaintiffs contend that the *Burford* abstention doctrine is inapplicable to the instant matter. Defendants do not argue that *Burford* abstention is appropriate merely because zoning-related decisions are at issue. Rather, *Burford* is appropriate as the actions challenged by Plaintiffs were the byproduct of careful consideration of land use developed at the local level.

---

[8] While the case cited by Plaintiffs, *Sunrise Develop. Inc. v. Town of Huntington*, 62 F.Supp.2d 762, 769 (E.D.N.Y. 1999) initially appears analogous, Plaintiffs generalize the facts in order to align that case with the instant matter. The *Sunrise* Court considered "the Town's enactment of the new Local Law [as] tantamount to a final denial of [Plaintiff's] special use permit", as the law changed the application for a special use permit. The law did however contain a "grandfather" clause that would have allowed plaintiff to have its application considered under the old criteria where plaintiff's success was more likely. When the defendant denied Plaintiff's request to have his application grandfathered, the Court considered the denial a final determination subject to judicial review.

9

Despite Plaintiffs' contentions to the contrary, Defendants did not and do not assert that *Burford* is appropriate because there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Rather, Defendants rely upon the second prong of the *Burford* analysis, which grants a federal court the discretion to abstain from entertaining jurisdiction over the matter would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern, which in this case is the comprehensive land use plan carefully developed by the City of Saratoga Springs. Plaintiffs seek as a remedy "an injunction directing Defendants to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future." (Complaint, Wherefore Clause, (b)). There is no way that this court could order Defendants to re-zone the SWAD, grant Plaintiffs a special use permit, and somehow prevent similar situations in the future without, in essence, becoming a federal zoning board of appeals. This case is analogous to "the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials [which are] simply not the business of the federal courts." *Sylvia Dev. Corp. v. Calvert County,* 48 F.3d 810, 828 (4th Cir.1995) *quoting Gardner v. City of Baltimore,* 969 F.2d 63, 67 (4th Cir.1992); *see also Pomponio v. Fauquier County Bd. of Supervisors,* 21 F.3d 1319, 1328 (4th Cir.1994) (en banc).

## CONCLUSION

For all of the foregoing reasons Plaintiffs' Complaint should be dismissed in its entirety. In the alternative, the Defendants request that this court remove from this action the Mayor, both individually and in his official capacity as Mayor, as well as the Panning Board and the individual members of the Planning Board and the City Council in their individual as well as official capacities.

DATED:   May 23, 2006

                        GIRVIN & FERLAZZO, P.C.

                        By:___/s/_____
                             GREGG T. JOHNSON
                             Bar Roll No.: 506443
                             SCOTT P. QUESNEL
                             Bar Roll No.: 513710
                        Attorneys for Defendants
                        Office and P.O. Address
                        20 Corporate Woods Blvd.
                        Albany, New York 12211
                        Tel:   518-462-0300
                        Fax:  518-462-5037