# EXHIBIT 46

# PLANNING BOARD
# CITY OF SARATOGA SPRINGS
# WEDNESDAY, NOVEMBER 3, 2004
# CITY COUNCIL ROOM

### MINUTES

**MEMBERS PRESENT**

Lewis Benton
Robert Bristol, Chair
Robert Israel
William McTygue
Nancy Ohlin
Dana Rosenstreich
Lou Schneider

**STAFF PRESENT**

Geoff Bornemann, City Planner
Paul Mayer, City Engineer

**CALL TO ORDER**

Bob Bristol, Chair, called the meeting to order at 7:00 p.m.

**APPROVAL OF THE MINUTES OF THE OCTOBER 6, 2004 MEETING.**

Dana Rosenstreich proposed two minor amendments to the minutes as drafted and then moved and Nancy Ohlin seconded to approve minutes of the October 6, 2004 as amended. Ayes all, motion carried 7-0.

**REPORT ON ADMINISTRATIVE ACTIONS BY THE CHAIR:**

**03.032 HIGH ROCK SUBDIVISION:** 144 High Rock Avenue

In a letter dated October 15, 2004, the applicant requested an amendment to the subdivision approval granted by the Planning Board on April 2, 2003 to revise the layout of the parking spaces on the north side of Kar Alley due to changes in the construction of the nearby retaining wall.

After consultation with the Department of Public Works, the Chair on October 26, 2004 granted the request with the condition that the adjoining property owner shall maintain the portion of the parking spaces that lie within the public right-of-way.

**ANNOUNCEMENT OF RECORDING OF PROCEEDING:**

The proceedings of this meeting are being taped for the benefit of the secretary. Because the minutes are not a verbatim record of the proceedings, the minutes are not a word-for-word transcript of the recording.

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

### COMMENTS FROM THE CHAIR:

Robert Bristol announced that the Joint Zoning Ordinance Review Workgroup met on Tuesday, October 12, 2004 to work on another set zoning amendments.  The next meeting of the Workgroup will be held on Tuesday, December 14, 2004 at 5:00 p.m.  Lou Schneider and Bob Bristol represent the Planning Board on this committee. Lou Schneider chairs the group, which also includes two members from the Zoning Board of Appeals and two members from the Design Review Commission.

Robert Bristol said that there will be special workshop on workforce housing on Thursday, November 4, 2004 at 7:00-9:00 p.m. at the Marriott Hotel with additional meetings on Friday, November 5, 2004 from 9:00 a.m.-12:00 p.m. at the Library Community Room.  Nancy Ohlin has been working with other groups to organize these workshops. The Planning Board is one of the sponsors of the workshops.  Nancy Ohlin said that affordable housing would be the main focus of the meeting where national experts will be presenting information.  She said that the Friday morning session would try to get some action policies and legislation in motion.

Robert Bristol stated that the City Council has asked for more time (beyond the 30 days) to review the Planning Board's set of revised Standard Construction Detail that was sent to them on October 12, 2004.  He added that it is expected that the Council will take action at their next meeting on November 16, 2004.

### PRIVILEGE OF THE FLOOR

Robert Bristol opened the meeting to the audience as an opportunity to allow citizens to address planning issues not on the scheduled agenda.  Mike Ingersoll, 5 George St., announced that on October 28, 2004, the American Planning Association at their Rochester meeting recognized Congress Park Center as the most outstanding in-fill implementation project in the State. He noted that this was the second year in a row that a project in Saratoga Springs has won an award.  The Mill project on Excelsior Avenue won the same award last year.  Robert Bristol pointed out that the nominees were from all areas of upstate New York and that these APA awards are prestigious.

### REVIEW OF LEGISLATION RELATING TO WATER SERVICE AGREEMENTS

Robert Bristol announced that on September 21, 1999, the City Council passed an amendment to the water service/connection fee ordinance that stated: "Any development which will require a new service connection or connections shall make application to connect to the city water system to the Department of Public Works for approval of such connection and shall, prior to submitting any application to any city board or office, including but not limited to, the Building Inspector or the Planning Board, enter into an agreement with the Department of Public Works for payment of all connections fees imposed herein." (Section231-48-C of the City Code)"

Robert Bristol said that the City Attorney's office offered the interpretation that if someone needs a new connection to the municipal water supply, they cannot make an application to this Board or any other board or the City Council until they have that application approved and signed by the Department of Public Works.  Geoff Bornemann stated for point of clarification that if an applicant does not need a new municipal water service connection, then the ordinance doesn't apply.

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

William McTygue, Board member who is also the Director of DPW, said that for quite some time he has been seriously concerned about water demands by development. He said that until the City finds a new water source that will carry the City well into the future, especially the larger scale projects will be met with some resistance when it comes to a promise to provide large amounts of water. He stated that he has no problem with project that need a special use permit, but he does have issues with large scale project that need site plan approvals. An applicant must understand what the implications are in the future for supply. He explained that on Tuesday, November 16, 2004 at the City Council meeting, the DPW would be bringing forth the SEQR environmental data and conclusions, which have resulted in the long search for a water supply. He said he believes that a developer can still come in for special use or subdivision site plan approval. Geoff Bornemann said that recently DPW has not been signing some of the water service agreement that are required to be part of applications for special use permits.

Geoff Bornemann suggested that in the absence of clearer language from the City Council, the Planning Board may wish make an interpretation that Planning Board applications that do not directly involve the installation of water lines do not need to have water service agreements that are submitted by the applicant and signed by DPW. This would generally mean that applications for special use permits would not need to be accompanied by a signed water service agreement. However, all site plan and subdivision applications that needed new water services would require signed water service agreements.

The Board agreed that this interpretation was valid.

Robert Bristol stated that the following is a status of projects on tonight's agenda that will eventually have City water service, that currently do (indicated by a YES) have or do not (indicated by a NO) have a signed water service agreement from DPW:

- Excelsior Park – YES
- Hotel/Condo Project – YES
- Country Club Estates – NO
- C&S Construction Property – NO
- White Property – NO
- Stewart's Mixed Use Development – YES
- Mill Property Mixed Use Development – YES

## 03.034 EXCELSIOR PARK – PHASE I:  264 Excelsior Avenue

This was an application by Witt Construction (David Lloyd, Project Manager) to reduce existing cash escrow account from $554,300 to $249,300 and to extend the expiration date from December 31, 2004 to December 31, 2005.

Appearing before the Board was David Lloyd, applicant.

BACKGROUND: Robert Bristol noted that the subdivision approval was granted on April 2, 2003 and this is the first request for a letter of credit revision. The cash escrow account covers the construction of the roads and infrastructure in this mixed-use project. He also stated that the project was under construction and was more than half completed.

CURRENT REQUEST: David Lloyd stated that the reason for the extension is that the magnitude of the site work and unanticipated site conditions and change orders have lengthened the construction sequence. Robert Bristol said that the City Engineer has recommended the reduction in the letter of credit, which is in compliance with the Board's standards on reductions.

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

David Lloyd said that the reduction in the amount was because the work has been completed to date in incremental amounts.  Dana Rosenstreich said that she has previously voted against motions involving this project because she felt it was too big for the City, but that since this was an administrative type action, she would vote for it.

PUBLIC COMMENTS:  Robert Bristol opened the meeting to comments from the audience.  No one spoke.

TECHNICAL ISSUES:  Robert Bristol reported that the application fee of $400 has been paid.

DEPARTMENTAL COMMENTS: Robert Bristol noted the comments from the City Departments: DPS comments: Fire Department:  "None."  Police Department: "None."  Traffic Maintenance: "None."  Administration: "None."  DPW comments: No comments received. Office of the City Engineer:  "Reduce LoC from $544,300 to $305,900".

SEQR:  The Board noted that no SEQR action is required.

DECISION:  Lou Schneider moved and Robert Israel seconded to reduce existing cash escrow account from $554,300 to $249,300 and to extend the expiration date from December 31, 2004 to December 31, 2005.  Ayes all, motion carried 7-0.

## 03.088 HOTEL/CONDO PROJECT: 52 Marion Avenue

This was an application by The Marion Group, LLC (James Berry) to extend the expiration date for an existing site plan from October 15, 2004 to October 15, 2005.

Appearing before the Board was David Schlosser, architect.

DISCLOSURE:  Bob Israel has disclosed that he owns a lodging establishment within the City. He said that he would not recuse himself because his interest in this project is only as a citizen.

BACKGROUND:  The Board noted that site plan approval was granted on April 2, 2004 and at the time of approval, the regulations stated that a building permit and actual construction must begin within 12 months. This project involves the construction of a mixed-use project with 80 hotel rooms, 69 residential condos, 8 townhouses, 400-seat restaurant, 6,000 sq. ft. and 9,200 sq. ft. of retail/office space. The application is about obtaining the building permit for this project.

REASONS OF THE EXTENSION:  Dave Schlosser said that the reason for the extension request is that due to the project's complexities, all municipal approvals have taken longer than expected. The building permit is still under review, but approval is expected in 30-60 days and the project is expected to be in the ground by the end of the year and will be doing winter construction. He said that the applicant has just received Dept. of State opinion letters and DOT approval. He stated that the project has cleared DRC also. He added that the biggest complexity in this project was the financing.

William McTygue said that DPW would appreciate the old water line in Marion Avenue being replaced as soon as possible even before earth moving on the site because the winter weather begins.  Dave Schlosser said that the water line replacement also remained a high priority for the applicant.

PUBLIC COMMENTS:  Robert Bristol opened the meeting to comments from the audience.  No one spoke.

4

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

TECHNICAL ISSUES:  Robert Bristol noted that no application fee was required.

DEPARTMENTAL COMMENTS: Robert Bristol noted the comments from the City Departments: DPS comments: Fire Department: No comments received.  Police Department: No comments received. Traffic Maintenance: No comments received. Code Administration: No comments received. DPW comments: No comments received. Office of the City Engineer: "No concerns or comments."

SEQR:  Robert Bristol noted that no SEQR action was required.

DECISION:   Lou Schneider moved and Nancy Ohlin seconded the motion to approve the extension from October 15, 2004 until October 15, 2005.  Ayes all, motion carried 7-0.

## 04.086 ADVISORY OPINION TO THE CITY COUNCIL – LODGING ESTABLISHMENTS: Citywide

DISCLOSURE:  Bob Israel has disclosed that he owns a lodging establishment within the City but said he would not recuse himself from this decision.

This is a request from the City Council for an advisory opinion on recommendation to amend the zoning regulations relating to all lodging establishments.  This discussion was continued from the October 6, 2004 meeting.

BACKGROUND:  The Board noted the following historical development of this advisory opinion. In 2001, the Planning Board proposed permitting B&Bs only on the selected corridors, but this proposal was tabled by the City Council.  In 2003, the Department of Accounts created a committee that developed new definitions and requirements for the licensing of lodging establishments.  Those recommendations have been adopted by the City Council.  In March 2003, the Workgroup started working on these proposed zoning amendments relating to lodging establishments.

Robert Bristol said that he and Lou Schneider have worked on this Workgroup for a couple of years.  Lou Schneider chaired the Joint Group who sent it to the ZBA and DRC and they returned it with no recommendations for changes.  He said values Bob Bristol's knowledge and all the time that he put into the Workgroup.  He also believes that Robert Israel should recuse himself from voting on this issue.

Robert Israel said that there is no direct financial impact of any of the new lodging definitions on his hotel.  He said that he also owns a house that could very easily be adapted to a B&B, but as a citizen he wants to have a voice on this issue.  He said that he makes disclosure but would not recuse himself.  Nancy Ohlin said that we are all deeply appreciative of the Workgroup's efforts trying to come up with new lodging definitions; however, when hundreds of people became involved with objections when the ordinance was proposed, then the direction needed to shift and scale back and take one step at a time.   Dana Rosenstreich also expressed appreciation of the Workgroup's efforts.

Robert Israel distributed some research on two legal cases that he had gathered from the Appellate and 2nd Circuit courts that indicate Planning Board may have difficulty rejecting special use permits due to general objections relating to adverse impacts caused by traffic, noise, etc. He said that if the current recommended special use permit process for lodging establishments

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

were adopted, the Planning Board would have a difficult time turning down special use permits in large sections of the City even though the neighborhoods objected. However, Lou Schneider noted that the ordinance also provided for site plan review that could be used to turn down projects.

Dana Rosenstreich noted that the Board's subcommittee met on Monday, November 1, 2004 and agreed to recommend the following changes to the proposal submitted by the Workgroup:  1) Allow Level I Neighborhood Rooming House (up to 4 rooms) only in the UR-3 district and in any commercial district.  The Workgroup had recommended that these be located in any zoning district where single- and two-family use is permitted.  2) Elimination of the entire classification of Level II - Corridor Rooming House (5 to 10 rooms).  3) Allow Level I Neighborhood B&B (up to 5 rooms) only in the UR-3 district and in any commercial district.  The Workgroup had recommended that these be located in any zoning district where single- and two-family use is permitted.  4) Allow Level II Neighborhood B&B (5 to 10 rooms) only in the UR-3 two corridors (Union Avenue and Lake Avenue) and in any commercial zoned district.  The Workgroup had recommended that these be located in about 25 corridor streets.  5)  Eliminate the entire classification of Inns (11 to 25 rooms).

Robert Bristol noted that if there is agreement with the direction of these recommendations, it may be desirable to evaluate the impact of these recommendations on the current lodging establishment ordinance to determine any adverse impacts on the ordinance and on existing establishments. Nancy Ohlin suggested that the Board may also want to notify neighborhoods about the proposed regulations.  Robert Bristol said that the specific wording of the changes also have to be placed in a draft ordinance before being sent back to the City Council.

PUBLIC COMMENTS:  Robert Bristol opened the meeting to comments from the audience and noted that the Board has received a petition submitted by 146 residents in the Phila Street/Caroline Street/Nelson Avenue area and a letter from Joseph Dalton, 14 Loughberry Road, dated November 2, 2004.

Susan Steer, 185 Phila Street, stated that she was pleased overall with the recommendations and very happy to see the elimination of the Level II rooming houses on the streets and corridors in her neighborhood.  She said that she was pleased with all the new recommendations.

DEPARTMENTAL COMMENTS:  Robert Bristol noted the comments from the City Departments: DPS comments: Fire Department: No comments received. Police Department: "None." Traffic Maintenance: "No comments." Code Administration: "None." DPW comments: No comments received. Office of the City Engineer: "Why not have identical definitions between zoning and licensing?  Who will monitor this length of stay?  Why have a minimum number of rooms in a corridor B&B?"

SEQR:  Robert Bristol noted that no SEQR action is required for the advisory opinion.

Dana Rosenstreich moved and William McTygue seconded that the Board support the  integrate the subcommittee's five recommended changes, that the Workgroup's proposal would be carry an unfavorable opinion, but integrating the five new recommendations may bring it to favorable opinion.  Dana Rosenstreich amended the motion to bring a final version of the ordinance to the next meeting and then vote. The revised motion carried 5-2. Ayes Lewis Benton, Robert Israel, William McTygue, Nancy Ohlin, Dana Rosenstreich.  Nayes Robert Bristol and Lou Schneider.

City of Saratoga Springs Planning Board Minutes
Wednesday, November 3, 2004

## 04.093 ADVISORY OPINION TO THE CITY COUNCIL- GILBERT ROAD/LAKE AVENUE AREA REZONING: 390 Lake Avenue

This was an application by the City Council (Mayor Lenz) for an advisory opinion to rezone 80 acres on 6 parcels from Southern Weibel Avenue District to Rural Residential-1.

Appearing before the Board was Tony Izzo, City Attorney.

BACKGROUND:  The Board noted the Comprehensive Plan history of these properties:  The 1987 Comprehensive Plan designated this area Commercial-2 (Motor-oriented Commercial) and Commercial-4 (Low Density Office Park Commercial).  The May 4, 1999 Comprehensive Plan designated this area "IA – Impact Area".  The July 17, 2001 Comprehensive Plan designated this area as "Conservation Development District" (residential density of 0.0-0.5 units per acre).  The current Comprehensive Plan has designated this area as "Conservation Development District" (residential density of 0.0-0.5 units per acre).

The Board also noted the zoning history of these properties:  From 1971 to 1987 the area was designated "Conservancy" (2 acre lots) which allowed UR-1 (1/4 acre lots) zoning if water and sewer were extended to the site. From 1987 to 1990 the area was designated "Conservancy) (2 acre lots).  From 1990 to 1999 the area was designated "Rural Residential-1" (2 acre lots).  From August 2,1999 to May 20, 2003 the area was designated "Southern Weibel Avenue District). From May 20, 2003 to May 10, 2004 (Court order) the area was designated "Rural Residential-1". From May 10,2004 (Court order) to today the area is designated "Southern Weibel Avenue District".

The Board noted the *development proposal history* of the area: In 1977, the Andersons applied to the City Council to change a portion of this area from "Conservancy" to a "B-2" commercial district. The application apparently was withdrawn.  In 1986, the Andersons applied to the City Council to change this area from "Conservancy" to a Planned Unit Development District known a "Saratoga East".  The applicant was instructed to prepare a draft Environmental Impact Statement for this PUD.  No draft EIS was submitted to the City, but it appears that zoning request could be still considered open. In 1973, Congress Gas and Oil received a use variance for a gas station at the intersection of Gilbert Road and Lake Avenue.  This variance authorized the construction of the Stewart's Shop in 1990.

The Board also noted the Planning Study background:  In the 2001 Comprehensive Plan, it was recommended that: "A consultant should be retained to assist the City with the preparation of a land use plan for the area near the intersection of Gilbert Road and Weibel Avenue. The plan should be developed with significant public participation.  It should address design standards, traffic calming actions, road realignment and mixed land uses." With a planning grant from CDTC, Behan Planning Associates were hired to assist with the preparation such a study.  In late 2003, the Weibel Avenue/Gilbert Road Advisory Committee, chaired by Lou Schneider, issued its report.  The Committee offered 4 land use options:  1)  Open space and recreation strategy (purchase of land for recreation use). 2)  Maintain the current RR-1 zoning. 3)  Create a Lake Avenue Corridor Gateway Overlay and allow limited additional special permit uses to complement existing RR-1 zoning. 4)  Develop an incentive zoning program to achieve desired amenities.  The Board noted that the City Council has not yet taken any action on the Committee's report.

The Board noted that the characteristics of the 6 parcels are as follows:  374 Lake Avenue (166.00-3-1) is a 71.3-acre vacant parcel owned by Anderson/Lehndorff.  378 Lake Avenue (166.00-3-2) is a 3.21-acre vacant parcel owned by the Adirdondack Trust Company.  380 Lake

7

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

Avenue (166.00-3-3) is 1.69 acres and has a structure that appears to be used as a single-family residence and is owned by A & R Parisi.  382 Lake Avenue (166.00-3-4) is 1.86 acres and has a structure that appears to be used as a single-family residence and is owned by Peter Tulin.  402 Lake Avenue (166.00-3-6.2) is a 0.09-acre vacant parcel immediately to the west of the Stewart's Shop and is owned by Willard and Gail Anderson.  404 Lake Avenue (166.00-3-26) is 1.25 acres and has Stewart's Shop and gas station.  This property is owned by Stewart's Shops Corporation.  As per Court Order of May 10, 2004, all six properties were zoned SWAD.

The Board also noted the following required approvals: For selected uses in the RR-1 district (other than single family homes), a special use permit and site plan review approval from the Planning Board is required and for all properties that front on Lake Avenue, architectural review from the Design Review Commission would be required.

PROPOSAL: Geoff Bornemann noted that no specific reasons for rezoning were provided with the application; however, the proposal does bring the zoning for the properties in compliance with the Comprehensive Plan designation of "Conservation Development District."

ALTERNATIVES: Geoff Bornemann noted that there were a number of alternative solutions for these properties:  1)  Continue SWAD zoning which would require an amendment to the Comprehensive Plan which would designate this area as "Special Development Area. 2)  Change to T-4 or T-5 zoning which would require an amendment to the Comprehensive Plan, which would designate this area as "Special Development Area.  3)  Modify the RR-1 zoning for some of the alternatives suggested in the Weibel Avenue-Gilbert Road Study Area Advisory Committee report, or 4) Other alternatives.

Geoff Bornemann suggested that there were two of the issues that could be considered by the Board.  1) Should the adjacent 43-acre Anderson parcel be included in this rezoning proposal? That parcel would be the only one to remain in the SWAD zoning.  2) Should the Stewart's Shop parcel be included in the RR-1 zoning or should it remain SWAD? It is proposed to go to RR-1. He noted that in terms of potential impacts of zoning change, the changing of the zoning from SWAD to RR-1 should result in significantly fewer adverse impacts.

Robert Bristol noted that Section 240-15.3C requires the Board to determine the following:  The revision is not contrary to the general purpose and intent of this chapter (zoning), and the revision is accordant with the Comprehensive Plan's designation for the area which is "Conservation Development District" which permits residential densities of 0.5 units per acre or less.  The Board also determined that the proposed RR-1 zoning district would be compatible with the CDD designation and that the proposed RR-1 district already exists in the zoning ordinance.

The Board had questions about the May 2003 court case.  Tony Izzo, City Attorney, stated that Gail Anderson was the only petitioner in that court case and that was a very unusual court case. Tony Izzo said that his interpretation was that the Planning Board would be asked to advise on the 80 acres only (the six parcels), not all 777 acres throughout the City that were rezoned in 2003.  Lewis Benton said that Judge Tom Nolan's decision was confusing.

Lou Schneider noted that the City Council did not act on any of the four recommendations submitted by his study group.  Robert Bristol said that if the zoning is not in compliance with the Comprehensive Plan, the City Council could revise the Comprehensive Plan or bring existing zoning into compliance with the Plan.  Tony Izzo suggested that if anyone had further questions to read the minutes from around that time to possibly get more clarification.

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

Nancy Ohlin stated that she would urge the City Council to look at the entire 120 acres (80 + adjoining Anderson 40), not just the six parcels (80 acres).

Lou Schneider also said that the City Council needs to go through the SEQR process before it even gets to the Planning Board.

Lewis Benton pointed out that history has consistently called for the area to be in a rural category, even as recently as the 1996 East of the Northway Study prepared by the Planning Board.  He said that the current Comprehensive Plan puts this area in the "country overlay" area.  Robert Bristol stated that in 1972, when he was at RPI, his students did a semester-long, open-space study of Saratoga Springs, which finally became "City in the Country."

PUBLIC COMMENTS:  Robert Bristol opened the meeting to comments from the audience. Robert Bristol noted that the Board had received a letter from Alane Ball Chinian, Executive Director, Saratoga PLAN, dated November 3, 2004.

John Corrou, 7 Piping Rock Circle, said that he believed that the Anderson family and partners have tried to bring Wolf Road to Saratoga for over 30 years.  He believes that sectioning off these parcels will create a chain reaction and other parcels would follow.  He urged keeping all areas as RR-1.  Robert Israel responded that the City Council could change the Comprehensive Plan and the Planning Board might be compelled to accept the changes.  He urged concerned citizens to bring the matter to the City Council.

Theresa Capozzola, 57 Gilbert Road, said that she wants to thank the Planning Board for all their hard work on these issues and believes the City Council is acting irresponsibly and has been unresponsive to acting on the four recommendations with the exception of Matt McCabe.  Robert Bristol responded that at the meeting on November 17, 2004, the Anderson request will be treated like any other application, treated in accordance with the law and rules and that the applicant will take one step at a time through the request process, just like other applicants.  Geoff Bornemann said the 43 acres in question were in a SWAD district and that the Andersons have a right to apply for a special use permit on November 17, 2004.

John Kaufmann, 41 White Street, said that the existing SWAD zoning is very broad in what can be done there and the applicant has asked for too much.  Robert  Bristol said that the Board's obligation to accept an applicant if the applicant has a legal right to apply.  If the zoning is the SWAD zoning, then it would govern the project.  Nancy Ohlin noted that the City Council is obligated to act to keep the zoning in compliance with the Comprehensive Plan.

Debbie Kwazneski, 63 Gilbert Road, asked if the 1999 SWAD zoning ordinance rules apply now to the Anderson's application.  Geoff Bornemann indicated that the 1999 rule does apply today.

Jim Stegman, 30 Crommelin Drive, said that he believes the zoning should be restored to the Rural Residential – I district.  He added that citizens trust that the City Council will have the interests of the citizens at heart rather than that of out of town developers. The Council should accept the citizen's mandate that the citizens gave them when the votes were made.  He said that instead, momentum has grown over time and the area has become compromised.  If the City Council had responded to court ruling and recommendations, then we wouldn't be here tonight.

Paul Bulmer, real estate representative for Stewarts located at 402 Lake Avenue, stated that they want to go on record as being opposed to zoning as RR-1 and preferred the T-4 zone because Stewarts is a small commercial use.  Geoff Bornemann added that their property was currently

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

zoned SWAD.  Nancy Ohlin mentioned that the use variance that Stewarts' already has runs with the land.

Harry Snyder, 432 Grand Avenue, representing the Adirondack Trust Company can lived with SWAD zoning for their 3.5 acre parcel just east of I-87.  He stated that zone T-4 would be appropriate and that special use permits should be allowed in the Lake Avenue corridor.  He believes their parcel is ill-suited for residential development because it's right on Rt. 29 with no occupied residences east of I-87.  Lew Benton stated he believes that the City Council is ready to rezone their parcel to RR-1.  Harry Snyder said that was what he was against.

Matt Jones, attorney on behalf of Al and Rita Parisi who own property at 380 Lake Avenue, explained that the Parisi's were retired owners of one of the six parcels under consideration and that they bought the house in the mid-1970's.  He said that they have been trying to sell their property for a couple of years unsuccessfully because they have been the subject of moratoriums and many changes.  He stated that the property has undergone several zoning changes through the years.  He believes that his clients would be better served if the portion that ran from the Northway down to Stewart's were considered a T-4 and T-5 districts which would allow some commercial uses. His clients are caught up in the fight.  He suggested an entrance to City, similar to that of Ballston Spa, which would be commercial for approximately 300' on each side of Lake Avenue.  He said that such a narrow 300' wide entrance overlay district would allow clients to recover at least a portion of their investment rather than staying residential.

Ted Martin, 366 Lake Avenue, said that he was concerned that Lake Avenue would continue to be bogged down with even more traffic, which is already horrendous.  If this zoning does not go back to RR-1, the area will experience a snowball effect of variance and rezoning requests.

Cliff Ammon, 238 Nelson Avenue, said he took part in many of the meetings when the Comprehensive Plan was developed and it should not be changed at this time.  Geoff Bornemann noted that a Comprehensive Plan was adopted by the City Council as a legal document after public hearings.  Robert Bristol added that anything is subject to change, but such changes need to follow a proper legal process.  Nancy Ohlin said she wants to see action for the whole community good regardless of specific issues of parcels bought when they were RR-1.

DEPARTMENTAL COMMENTS:  Robert Bristol noted the comments from the City Departments: DPS comments: Fire Department: "1) Continued residential development without proportional increase in fires and safety resources will tax the available manpower and equipment. 2) The response time to this area will be close to the six minute recommended response time.  This will not help our current insurance rating.  3) The current hydrant main system should be looped from Conver Drive to Weibel Avenue. Police Department: "None."  Traffic Maintenance: "No comments at this time." Code Administration: "No comments at this time."  DPW comments: No comments received. Office of the City Engineer: "I don't believe that the RR-1 zone is appropriate for this land that abuts the Northway.  There are higher and better uses that should be considered."

SEQR:  Robert Bristol noted that no SEQR action required for the advisory opinion.  He also noted that the rezoning proposal does not currently contain any SEQR environmental assessment form. The SEQR analysis would be need before the City Council could take action on the project.

DECISION:  Nancy Ohlin moved and Lewis Benton seconded to issue a unfavorable advisory opinion and send it back to the City Council with a request for them to take a look at the entire

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

124 acre SWAD, and that the zoning for the entire area should be zoned RR-1 to be in compliance with the policies of the Comprehensive Plan. Ayes all, motion carried 7-0.

## 04.087 COUNTRY CLUB ESTATES – PHASE I: 14-48 Outlook Avenue

This was an application by Louis J. Farone et al for a 20-lot subdivision in an UR-2 District. The intent is to re-subdivide 14 lots into 20 lots. This discussion was continued from the October 6, 2004 and October 20, 2004 meetings. Revised material was submitted on October 27, 2004.

Robert Bristol stated that the applicant has requested a continuation to the November 17, 2004 meeting.

The Board agreed to continue the public hearing to the November 17, 2004 meeting.

## 04.068 C&S CONSTRUCTION PROPERTY: 71 Ruggles Road

This is an application by C & S Construction for a 6-lot subdivision in a RR-1 District. The intent is to build 6 new single-family detached homes. This discussion is continued from the September 29, 2004 Planning Board meeting. Revised plans were submitted on October 20, 2004.

Robert Bristol stated that the applicant has requested a continuation to the December 8, 2004 meeting.

The Board agreed to continue the public hearing to the December 8, 2004 meeting.

## 04.092 WHITE PROPERTY: 35-67 West Avenue

This was an application by Richard White for a 2-lot subdivision in a T-5 District.

Appearing before the Board was Frank Palumbo, engineer.

Frank Palumbo added that the application form should have stated that the applicant was Saratoga Route 29 Plaza Limited, not Richard White.

BACKGROUND: The Board noted the history of the site that includes the following: The Post Office was developed on Lot #1 without any municipal approvals because it was exempt from the process. A portion of this property was apparently transferred to Adirondack Appliance property in a boundary line adjustment within the last 10 years. The Board noted that any development on Lot #2 will require a special use permit from the Planing Board as well as site plan review and architectural review.

PROPOSAL: Frank Palumbo said that the property is located near the corner of West Avenue and Washington Street. The land is under lease agreement to Richard White and his company to be exercised for purchase. He said that the applicant has no plans for developing at this point, but the purpose of the subdivision was marketing. Lot #2 contains 19.14 acres and has access of the Post Office driveway and Lot #1 contains 4.38 acres and is where the Post Office is located. He said Station Lane on the north side of the property and there is frontage along there and along West Avenue. He stated that the Post Office has not had to pay property taxes on the entire property. He showed an aerial photo to explain the property lines. He said that

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

the applicant did pay about $11,000 for the water and sewer hookups when the West Avenue improvements were made. If development were to happen in the future, then they would return for site plan approval. Robert Bristol said that as soon as the plat is signed, the property will revert to the tax rolls.

Robert Bristol noted the comments from the City Engineer and asked if the applicant owned any money to CDTC for the Station Lane improvements. Frank Palumbo that that this client never had any agreement with CDTC to pay for such improvements.

TECHNICAL ISSUES: The Board noted that the application fee of $600 has been paid. Proof of mailing to adjacent property owners has been submitted. Proof of payment of the legal ad has not been submitted.

Frank Palumbo agreed to comply with all the technical issues as listed on the Boards' agenda notes.

PUBLIC HEARING: Robert Bristol opened the meeting to comments from the audience. No one spoke. The hearing was closed.

DEPARTMENTAL COMMENTS: Robert Bristol noted the comments from the City Departments: DPS comments: Fire Department: "None." Police Department: "None." Traffic Maintenance: "No comments." Code Administration: "No comment at this time." DPW comments: No comments received. Office of the City Engineer: "Reimburse CDTC for work on Station Lane. Recommend that the developer of lot 2 contribute to the infrastructure of utilities and amenities along Station Lane. See comments on plans."

SEQR: Lou Schneider moved and Robert Israel seconded to move for the issuance of a negative declaration of environmental significance because the analysis of the information provided and presented in Part II of the environmental assessment form demonstrates that the project will not result in any large and important impacts and, therefore, is one that will not have a significant impact on the environment. Ayes all, motion carried 7-0.

DECISION: Dana Rosenstreich moved and Nancy Ohlin seconded to approve the 2-lot subdivision contingent upon all the items agreed to during the discussion. Ayes all, motion 7-0.

## 04.083 STEWART'S PROPERTY MIXED-USE PROJECT: 115 Excelsior Avenue

DISCLOSURE: The applicant has a provided a statement that their employee, Tom Lewis, is a County municipal official.

This was an application by Stewart's Shop Corporation (Jennifer Howard) for a special use permit for mixed-use project in a T-5 District. This discussion was continued from the October 6, 2004 meeting.

Appearing before the Board was Mike Ingersoll, landscape architect and John Muse, architect.

Mike Ingersoll said that the intent of the request is to permit the construction of a new mixed-use development with about 30,000 square feet of commercial use and 21,600 square feet of residential use. However, he said that the applicant wanted some flexibility on use of the space.

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

BACKGROUND: The Board noted that on October 20, 2002, the Planning Board granted approval for the demolition of the former building on this site. Also noted was that this project also requires site plan review and architectural review from the DRC. Robert Bristol commented that the Planning Board is hoping to soon start on working on a detailed traffic improvement plan and fair share cost plan for the Excelsior Avenue corridor.

REVISED PROPOSAL: Mike Ingersoll commented that the non-residential uses include professional offices, business offices and medical offices with no retail. There is a Stewart's across the street. Mike Ingersoll said the only modification would be changing the amount of commercial use in the front building from 30,000 to 36,000 square feet in three floors of 12,000 square feet each.

Mike Ingersoll indicated that at the Planning Board meeting on October 6, 2004, the applicant said there would be two phases. The first phase would be completed within 18 months (May 3, 2006) and the second phase by November 3, 2010 and details are as follows: Phase I - Front portion of building (36,000 square feet); Medical office maximum of 21,200 square feet; Business office maximum of 30,000 square feet; Professional office maximum of 30,000 square feet; and residential up to 25,000 square feet on the 2nd and/or 3rd floor. Phase II - West wing of building would be residential use with a maximum of 21,600 square feet. Mike Ingersoll said that the applicant would be willing to limit the amount of residential use to 45,600 square feet, but they not sure how many units that would be, but it may be between 24 and 36 units.

Mike Ingersoll presented a preliminary sketch of the building. The Board complimented John Muse on the attractive building design.

TECHNICAL ISSUES: The Board noted that the application fee of $1,000 has been paid; proof of mailing to adjacent property owners has been submitted; and proof of payment of legal ad has been submitted.

PUBLIC HEARING: Robert Bristol opened the public hearing to comments from the audience. No one spoke.

DEPARTMENTAL COMMENTS: Robert Bristol noted the comments from the City Departments: DPS comments: Fire Department: "Proposed project must be accessible per FCNYS Section 503. Canopy over walkway must be high enough (14 feet) to accommodate fire vehicles. Knox boxes will be required." Police Department: "Corridor traffic plan is needed and applicant need to contribute fair share." Traffic Maintenance: "Same comments as PD. If project is going to be before master traffic plan is in place, a traffic impact study should be preformed." Code Administration: "None." DPW comments: No comments received. Office of the City Engineer: "Concept is acceptable, seems to be keeping in character with the new uses in this corridor. I seem to recall a number of existing utilities in and around the WTP that cross this parcel. I assume it will be back for site plan review. Contribution to local traffic improvements? Copy of survey? NYSADLS cert.? Contours not labeled."

SARATOGA COUNTY PLANNING BOARD REFERRAL: Robert Bristol noted the decision the County Planning Board was "Approved" with attached staff comments about traffic impacts and shared driveways.

SEQR: Robert Israel moved and Lou Schneider seconded to move for the issuance of a negative declaration of environmental significance because the analysis of the information provided and presented in Part II of the environmental assessment form demonstrates that the

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

project will not result in any large and important impacts and, therefore, is one that will not have a significant impact on the environment. Ayes all, motion carried 7-0.

DECISION:  Lou Schneider moved and Dana Rosenstreich seconded the approval of a permanent special use permit with the following conditions: 1) The permitted uses shall be business offices, medical offices, professional offices and residential. 2) The total size of the project shall not exceed 57,600 square feet and the final authorization on square footage and amount of uses to be determined by the amount of parking provided during the site plan review process. The amount of business office use shall not exceed 36,000 square feet. The amount of medical office use shall not exceed 21,200 square feet. The amount of professional office use shall not exceed 31,800 square feet. The amount of residential use shall not exceed 45,600 square feet or 36 units. However, no one type of use shall occupy more than 70% of the total square footage of the project. 3) This special use permit for phase I shall expire on May 3, 2006 if construction has not started and phase II shall expire if construction of the last building is not started by November 3, 2010. 4) The site should be developed in general conformance with the submitted sketch plan. 5) The applicant may be required during the site plan review project to mitigate traffic impacts in Excelsior Avenue corridor by contributing a fair share cost for future traffic improvements.

Ayes all, motion carried 7-0.

## 04.084 MILL PROPERTY MIXED-USE PROJECT: 60 Weibel Avenue

This discussion was continued from the October 6, 2004 meeting.

This is an application by The Mill, LLC (Thomas Roohan) for a special use permit for mixed-use project in a T-4 District.

Appearing before the Board was Mike Ingersoll, landscape architect, Thomas Roohan and Sonny Bonacio, applicants.

Mike Ingersoll said the intent of this request is the construction of a new mixed-use project of up to 150,000 square feet.

BACKGROUND:  The Board noted that this project also requires site plan review and architectural review from the DRC.

PROPOSED USES: Mike Ingersoll noted that the proposed size of project and uses of the two non-residential buildings would be as follows:  Building #1 (75,000 square feet);  Retail maximum of 37,500 square feet;  Medical office maximum of 10,000 square feet;  Business office maximum of 75,000 square feet;  Professional office maximum of 75,000 square feet;  Eating and drinking establishment maximum of 10,000 square feet.  Building #2 (75,000 square feet);  Retail maximum of 37,500 square feet;  Medical office maximum of 10,000 square feet;  Business office maximum of 75,000 square feet;  Professional office maximum of 75,000 square feet;  Eating and drinking establishment maximum of 10,000 square feet.

Mike Ingersoll indicated that the final ratio will depend on the parking demand.  The Board also noted that the combination of proposed use would be limited by the number of available parking spaces, unless waivers of on-site parking were granted by the Planning Board during the site plan review process. 559 parking spaces are shown on preliminary sketches.

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

Mike Ingersoll displayed an aerial photograph of the 12-acre proposed site and Weibel Avenue Corridor. He stated that there is a purchase option in place and the applicant would like to close on the purchase. He said that the special use permit is consistent with the use of the zone. He indicated that the project is only land design at this point, but the concept is an office campus. He proposed a common drive to be shared by the two buildings and access would probably be from county-owned, city-maintained Weibel Avenue. He said that the application does not include residential. Robert Israel stated that whatever the applicant develops will set a pattern for the whole corridor. Mike Ingersoll said that a restaurant was envisioned as support for the office campus. He said that the project would not be competitive with the shopping center. Nancy Ohlin said that she would like to see *community interactive type retail* that would be residential support type of shops like coffee shop, card shop, etc. Robert Bristol said that sooner or later the land will need to go for something other than a shopping center. Robert Israel stated that there are a lot of uses that don't ever rely on walk-in traffic. Mike Ingersoll said that they are not opposed to retail such as a 3,000-4,000 sq. ft. shops like the size of Gap and Ann Taylor.

Mike Ingersoll stated that there could also be a cross-access road. He also stated that the existing sanitary pump station could be moved to the front of the ice skating rink.

PROPOSED LAYOUT: Geoff Bornemann noted that this project is located in a T-4 district and that the intent of the T-4 district is: "Urban neighborhoods are areas intended primarily for development of new residential areas incorporation a mix of unit types within a block grid typical of existing urban residential areas in Saratoga Springs." It goes on to describe "small scale commercial uses, primarily office an service retail". He noted that the Board will have to decide if the applicant's proposed layout generally conforms to the district development guidelines.

TRAFFIC IMPACTS: Robert Bristol indicated that it might be better to do the traffic study first and then get reimbursed by other future developers of the area. Geoff Bornemann said that a generic solution to a transportation system would depend upon complete build-out showing worse case scenario. He said that traffic resulting from any proposed residential areas in the immediate area also needs to be considered. He added that the question is do we deal with the impact of these developments one at a time as they come in for site plan review or now at the start of the area development. He also described a traffic study grant program that was available for which the City could make an applicant prior to December 17, 2004.

Robert Bristol reminded the applicant that a special use permit needs to comply with and be in conformance with the Comprehensive Plan, zoning ordinance, and be compatible with the neighborhood. He also added that impacts on transportation systems, on utility systems, on the natural environment and on the economy need to be addressed.

Lewis Benton said that he is uncomfortable about charging down this path, particularly with the *negative declaration, without knowing where we are going with this corridor.* He added that another highly charged Lake Avenue project is coming before the Board, probably at our next meeting. He said that he doesn't know what the solution is, but thinks that it is a real stretch to see how this project fits with the intent of this zoning classification. Robert Bristol said that he sees this area also opening the opportunity for residential development. William McTygue said that this project will be commercial retail space, not to accommodate big box retail, but commercial opportunities to support the tax base. He said he believes that the Board should take advantage of this situation by encouraging smart, responsible commercial use because there are limited opportunities to encourage commercial development. Robert Bristol added that if commercial growth is going to happen anywhere in our community, it is within this corridor. Nancy Ohlin said this project seems more like a T-5 project.

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

TECHNICAL ISSUES:  The Board noted that the application fee of $1,000 has been paid;  proof of mailing to adjacent property owners has been submitted; and proof of payment of legal ad has been submitted.  The applicant is to correct building coverage figures for building #1 and #2.

William McTygue noted that a water service agreement has not been signed by DPW, but DPW has indicated that this could be deferred until the time of site plan review application. Robert Bristol noted that this position was consistent with the interpretation agreed to earlier in the meeting.

PUBLIC HEARING:  Robert Bristol opened the meeting to comments from the audience.

Robert Hall, owner of the subject, said that he farmed this property with his nephew and niece. The three bought the property thirty years ago, although surrounding properties have been in his family for decades.  The house on the property has been vacant and he has received a demolition permit from the City to remove it.

Carol McGuire, Caroline Street, wondered if an applicant can get a special use permit and then do the studies or visa versa.  Nancy Ohlin stated that there is a whole list of acceptable and permitted uses in the T-4 zone.  Robert Bristol said that the applicant would have to prove that their project complies with the zoning requirements.  William McTygue said that it culminates at site plan discussion.  Nancy Ohlin said it would be unwise for an applicant to come up with a site plan that would not satisfy all the requirements.

DEPARTMENTAL COMMENTS: Robert Bristol noted the comments from the City Departments: DPS comments: Fire Department: "No concerns with special use permit." Police Department: "I trust they will contribute to the traffic mitigation effort underway in the corridor."  Traffic Maintenance: "The." Code Administration: "None." DPW comments: No comments received. Office of the City Engineer: "Sanitary sewer proposal is to relocate the Lake Avenue PS to the low area in front of the rinks. The force main will need to be extended from the relocated pump station to the old PS location. A gravity sewer main will be constructed along Weibel Avenue to pick up this project and any other projects along Weibel Avenue."

SEQR:  Robert Bristol noted that on October 6, 2004, the Board determined that this project was a "Type 1" action because it is a non-residential project that involves the physical alternation of more than 10 acres,  and initiated coordinated review with a request to be lead agency.   He indicated that responses from all three other involved agencies have been received. None objected to the Planning Board being lead agency so the Planning Board can now establish itself as lead agency.

LEAD AGENCY DECISION:  Lou Schneider moved and Dana Rosenstreich seconded to approve the Planning Board becoming the lead agency. Ayes all, motion carried 7-0.

SEQR DECISION: Nancy Ohlin moved and Lou Schneider seconded to move for the issuance of a negative declaration of environmental significance because the analysis of the information provided and presented in Part II of the environmental assessment form demonstrates that the project will not result in any large and important impacts and, therefore, is one that will not have a significant impact on the environment.  Ayes 6, Nay Lewis Benton.  Motion carried, 6-1.

DECISION: Lou Schneider moved and Robert Israel seconded to approve a permanent  special use permit subject to the following conditions: 1) The permitted uses shall be retail, business

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

offices, medical offices, professional offices and drinking and eating establishments. 2) The total size of the project shall not exceed 150,000 square feet. There shall be two building with each building having a limit of 75,000 square feet. In each building the amount of retail use shall not exceed 37,500 square feet, the amount of medical office use shall not exceed 10,000 square feet, the amount of business office use shall not exceed 75,000 square feet, the amount of professional office use shall not exceed 75,000 square feet and the amount of eating drinking establishment use shall I not exceed 10,000 square feet. The final authorization on square footage and amount of uses to be determined by the amount of parking provided during the site plan review process 3) This special use permit for this project shall expire on December 31, 2009 if all construction has not started. 4) The site should be developed in general conformance with the submitted sketch plan. 5) The applicant may be required during the site plan review project to mitigate traffic impacts in the Weibel Avenue corridor by contributing a fair share cost for future traffic improvements.

Ayes 5, Nayes Nancy Ohlin and Lewis Benton.  Motion carried, 5-2.

## 04.03 ADVISORY OPINION TO CITY COUNCIL – CONGRESS PARK CENTRE PUD AMENDMENTS: 307 Broadway.

This is a request from the City Council for an advisory opinion for amendments to the Congress Park Centre Planned Unit Development District.  The discussion was continued from the January 7, 2004 meeting.

Robert Bristol stated that the applicant has requested a continuation to the November 17, 2004 meeting.

The Board agreed to continue the discussion to the November 17, 2004 meeting.

## 04.094 LONG ALLEY BUILDING: 38 Long Alley

This was a request from the Design Review Commission for lead agency status for the environmental review associated with an application by 38 Long Alley LLC (Tom Frost) for establishment of lead agency and issuance of a SEQR determination for a proposed mixed use building in a T-6.

Geoff Bornemann noted that intent of the applicant is to demolish the existing Stroup News building and construct a new 5-story, 7,700 square foot, mixed-use building.

BACKGROUND:  The Board noted that this project needs architectural review approval from DRC and that the applicant has filed an application with the Design Review Commission.  The DRC has not taken any action pending resolution of SEQR issues.  The Project needs site plan review from the Planning Board, but no application has been submitted to the Planning Board.

The Board noted the following SEQR actions to date:  On October 7, 2004, the Design Review Commission determined that this project is not a Type II action and was therefore subject to SEQR.  On October 7, 2004, the Design Review Commission classified this project as a "Type I action".  (A non-residential building more than 4,000 sq. ft. adjacent to a National Register Site.) On October 7, 2004, the Design Review Commission determined that this project should have a coordinated review.  The DRC initiated the coordinated review process with a request that the DRC be the lead agency and the Planning Board has 30 days to respond.

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

PUBLIC COMMENTS:  Robert Bristol opened the meeting to comments from the audience.  No one spoke.

DEPARTMENTAL COMMENTS: Robert Bristol noted the comments from the City Departments: DPS comments: Fire Department: "I agreed with the Police Department's recommendation as the fire lanes must be kept open. Also recommend that powerlines be buried or moved so we have ladder truck access." Police Department: "Traffic and parking are already a problem. Parking violations I the alley are very common." Traffic Maintenance: "Long Alley should be changed to one-way northbound. Parking is becoming a problem. Needs improved no parking signage. One way- northbound should be between Church Street and Walton Street.." Code Administration: "I see no provision for the handing of waste generated by building occupants.." DPW comments: No comments received. Office of the City Engineer: "See comments on paperwork. No issues with DRC being lead agency.""

DECISION:  Lou Schneider moved and Nancy Ohlin seconded a motion to defer lead agency status to the Design Review Commission.  Ayes all, motion carried 7-0.

## DISCUSSION OF POSSIBLE REVISIONS TO THE SUBDIVISION REGULATIONS

Robert Bristol noted that the Planning Board has long be proposing to update its subdivision regulation. Present below were a list of some the possible amendments to the subdivision regulations that have been considered by the Board:

-   Because State Law now requires the City Council to adopt Subdivision Regulations, change all references to the document being the Planning Board's.
-   Expand section on jurisdiction to provide greater clarification of Planing Board responsibilities relating to re-subdivisions, administrative actions, lot line adjustments, etc, (Article I – Section 1)
-   Update existing purposed and policies to be broader and more inclusive (Article 1 – Section 2).
-   Update and expand definitions to reflect revisions to be made in the regulations (Article I – Section 2) necessary
-   Evaluate whether the regulations need to provide a distinction between "minor" and "major" subdivisions.
-   Evaluate whether the regulations should have a "concept plan" approval and/or whether to continue to have a provision for "preliminary" approval.
-   Update procedures for financial securities to conform to the new policies recently developed by the Planning Board. (Article III – Section 2)
-   Update standard for "as-built" drawings to reflect recent practices and decision of the Planning Board. (Article III – Section 2)
-   Revise procedures for street acceptances by requiring the City to do the top coat of pavement after all the homes are complete using funds set up in an escrow account by the developer. (Article III – Section 5)
-   Update list of items required for all the application submittals (Article IV)
-   Revise standards for types of street, use of cul-de-sacs, use of private streets and add a new standard for alleys. (Article V – Section 2B)
-   Revise standards on location of sidewalks to provide greater clarification of when waivers would be acceptable. (Article V-Section 2C)
-   Revise storm water management standard for full compliance with SWPPP. (Article V-Section 2D&F)

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

- Revise standards on water line location for cul-de-sacs so that the mains are not located under the pavement to avoid freezing potential. (Article V – Section 2H)
- Revise regulations regarding recreation land and cash-in-lieu of land to clarify how the fee applies to mixed-use project and the raise the amount for the cash-in-lieu of land from the current $500/lot. (Article V- Section 2N)
- Update and expand section on variances, waivers, interpretations, conflicts and separability, etc. to be more detailed (Article VII, VIII and IX)

Geoff Bornemann noted that the Board now has some funding available to hire a consultant to assist the Board with the proposed revisions.  A draft copy of the request for proposal (RFP) has been distributed to the Planning Board members.

Lou Schneider moved and Nancy Ohlin seconded to accept the list of proposed revisions and general content of the request for proposal for distribution to qualified consultants.  Ayes all, motion carried 7-0.

Lou Schneider also volunteered to review the responses to the RFP when they are received.

## DISCUSSION OF POSSIBLE REVISIONS TO APPLICATION FORMS FOR DISCLOSURE NOTICE

Geoff Bornemann noted that Section 809 in Chapter 24, Article 18 of the NYS General Municipal Law states that applicants making development applications to a municipality must disclose the "name, residence and the nature and extent of the interest" of any relationship with a municipal official.

Geoff Bornemann added that since many applications to the DRC/PB/ZBA are unaware of this provision in State Law, it has been suggested that an item be added to each of the City's application forms that would remind applicants of this responsibility.

Geoff Bornemann suggested that the following is a proposed item that would be added to each application form:

> "Does the applicant and his/her team of professionals have a contractual or family relationship (as defined in Section 809 of Chapter 24, Article 18 of NYS General Municipal Law) with any City employee, officer or Board member? ___Yes ___No.  If yes, statement disclosing name, residence and the nature and extent of the interest of any relationship must be filed with this application."

Geoff Bornemann said that the City Attorney has offered wording that is slightly simpler:

> "Does any City officer or employee have an interest (as defined by General Municipal Law Section 809) in this application?  Yes____  No____.  If yes, a statement disclosing the name, residence and nature and extent of this interest must be filed with this application.

Following a discussion Lou Schneider moved and Dana Rostenstreich seconded to move recommend that the following wording be added to the application forms.

> "Does any City officer or employee have an contractual or family interest (as defined by General Municipal Law Section 809) in this application?  Yes____  No____.  If yes, a

**City of Saratoga Springs Planning Board Minutes**
**Wednesday, November 3, 2004**

statement disclosing the name, residence and nature and extent of this interest must be filed with this application.

Ayes all, motion carried 7-0.

ADJOURNMENT

There being no further business, Bob Bristol adjourned the meeting at 10:15 p.m.

Respectfully submitted,

Karen Singerle
Secretary

Adopted: January 12, 2005