**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THE ANDERSON GROUP, LLC** and **GAIL**
**ANDERSON**,

|  |  |  |
|---|---|---|
| | **Plaintiffs,** | **1:05-cv-1369** |
| | | **(GLS\DRH)** |
| **v.** | | |

**CITY OF SARATOGA SPRINGS; MICHAEL**
**LENZ; SARATOGA SPRINGS CITY COUNCIL;**
**THOMAS CURLEY; MATTHEW MCCABE;**
**THOMAS MCTYGUE; STEPHEN TOWNE;**
**SARATOGA SPRINGS PLANNING BOARD;**
**LEWIS BENTON; ROBERT BRISTOL;**
**ROBERT ISRAEL; WILLIAM MCTYGUE;**
**NANCY OHLIN;** and **LOU SCHNEIDER,**

                              **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Relman, Dane Law Firm | JOHN P. RELMAN, ESQ. |
| 1225 19th Street, N.W. | REED N. COLFAX, ESQ. |
| Suite 600 | KATHERINE GILLESPIE, ESQ. |
| Washington, DC 20036 | JAMIE L. CROOK, ESQ. |
| | |
| Lynch, Farrell Law Firm | PETER A. LYNCH, ESQ. |
| 111 State Street | |
| Albany, NY 12207 | |
| | |
| **FOR THE DEFENDANTS:** | |
| Lemire, Johnson Law Firm | GREGG T. JOHNSON, ESQ. |
| P.O. Box 2485 | MARK J. LEMIRE, ESQ. |
| 2534 Route 9 | |
| Malta, NY 12020 | |

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Gail Anderson and the Anderson Group, LLC commenced

this action against defendant City of Saratoga Springs,[1] alleging claims

under the Fair Housing Act (FHA)[2] for disparate treatment, disparate

impact discrimination, and perpetuation of segregation.[3]  Following a nine-

day jury trial that began on June 21, 2010, the jury returned a verdict

finding that (1) both plaintiffs failed to prove that Saratoga engaged in

disparate treatment; (2) the Anderson Group proved that Saratoga

engaged in disparate impact discrimination, and Saratoga failed to prove its

conduct furthered a legitimate, bona fide governmental interest and that no

alternative action would have served that interest with a less discriminatory

impact; (3) Gail Anderson failed to prove that Saratoga engaged in

---

[1]On June 29, 2010, pursuant to an agreement reached by the parties, the court ordered the dismissal of all claims against the individual defendants.  (*See* June 29, 2010 Minute Entry, Dkt. No. 232; Trial Tr. at 1525-26.)

[2]42 U.S.C. § 3601, *et seq.*

[3]Plaintiffs' claims under New York State Human Rights Law, N.Y. EXEC. LAW § 296, were dismissed on October 18, 2007.  (*See* Oct. 18, 2007 Minute Entry, Dkt. No. 110.)

disparate impact discrimination; (4) the Anderson Group proved that Saratoga engaged in the perpetuation of segregation against African Americans, but Saratoga proved that its conduct furthered a legitimate, bona fide governmental interest and that no alternative action would have served that interest with a less discriminatory impact; and (5) Gail Anderson failed to prove that Saratoga engaged in the perpetuation of segregation against African Americans.  (*See* Verdict Form, Dkt. No. 237.) And having found Saratoga liable only under the Anderson Group's claims, the jury awarded the Anderson Group $1,000,000 in compensatory damages.  (*See id.* at 7.)  Pending is Saratoga's motion pursuant to FED. R. CIV. P. 50 and 59 for judgment notwithstanding the verdict, for a reduction of the verdict, or for a new trial.  (*See* Dkt. No. 262.)  For the reasons that follow, the court grants Saratoga's motion for a new trial and, in the alternative, grants a remittitur of the damages award, but otherwise denies Saratoga's motion.

## II.  <u>Standard of Review</u>

Under Rule 50, "[j]udgment as a matter of law is proper when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"

3

*United States v. Space Hunters, Inc.*, 429 F.3d 416, 428 (2d Cir. 2005)

(citing FED. R. CIV. P. 50(a)(1)).  Rule 59(a)(1), however, permits a new trial

when "in the opinion of the district court, the jury has reached a seriously

erroneous result or ... the verdict is a miscarriage of justice."  *DLC Mgmt.*

*Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (quotation

marks and citation omitted).  Rule 50 requires the court to "consider the

evidence in the light most favorable to the party against whom the motion

was made and ... give that party the benefit of all reasonable inferences

that the jury might have drawn in his favor from the evidence."  *Space*

*Hunters, Inc.*, 429 F.3d at 429 (internal quotation marks and citation

omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000).  "The court cannot assess the weight of conflicting

evidence, pass on the credibility of the witnesses, or substitute its judgment

for that of the jury."  *Space Hunters, Inc.*, 429 F.3d at 429 (internal

quotation marks and citation omitted).  Thus, a Rule 50 motion may be

granted only if "the evidence, viewed in the light most favorable to the

opposing party, is insufficient to permit a reasonable juror to find in her

favor."  *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289

(2d Cir. 1998).  Under Rule 59, the court is free to weigh the evidence and

4

grant a new trial if the jury's verdict is against the weight of that evidence. *See DLC Mgmt. Corp.*, 163 F.3d at 133.

### III. Discussion

### A. Standing[4]

Preliminarily, Saratoga reasserts its argument that the Anderson Group lacks standing to have brought and recover for a disparate impact claim. (*See* Def. Mem. of Law at 3-13, Dkt. No. 262:1.) While both parties agree that the only basis for the Anderson Group's injury could be economic losses, (*see id.* at 4; Pl. Resp. Mem. of Law at 4-5, Dkt. No. 267), Saratoga contends that the evidence adduced at trial demonstrates that the Anderson Group—separate and apart from Gail Anderson—had an insufficient interest in, i.e., no legally enforceable rights relating to, the Spring Run Village land, (*see* Def. Mem. of Law at 7-13, Dkt. No. 262:1).

The FHA confers standing upon "any person who ... claims to have been injured by a discriminatory housing practice." 42 U.S.C. §§ 3602(i)(1), 3613(a)(1)(A). FHA standing is construed as broadly as Article III of the United States Constitution permits, *see Havens Realty Corp. v.*

---

[4]In response to Saratoga's reliance on its trial brief for its abstention argument, (*see* Def. Mem. of Law at 35, Dkt. No. 262:1), the court similarly relies on its prior rulings in continuing to reject Saratoga's request to abstain, (*see* July 21, 2006 Summ. Order at 3, Dkt. No. 47; *see also* Pl. Resp. Mem. of Law at 3 n.1, Dkt. No. 267).

*Coleman*, 455 U.S. 363, 375-76 (1982), and is therefore conferred as long

as three elements of the "irreducible constitutional minimum" are met:

> First, the plaintiff must have suffered an 'injury in fact'—an
> invasion of a legally protected interest which is ... concrete and
> particularized, and ... actual or imminent, not conjectural or
> hypothetical.  Second, there must be a causal connection
> between the injury and the conduct complained of—the injury
> has to be fairly traceable to the challenged action of the
> defendant, and not the result of the independent action of some
> third party not before the court.  Third, it must be likely, as
> opposed to merely speculative, that the injury will be redressed
> by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal

quotation marks and citations omitted); *see also Vill. of Arlington Heights v.*

*Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260-61 (1977) ("The essence of

the standing question ... is whether the plaintiff has alleged such a personal

stake in the outcome of the controversy as to warrant [its] invocation of

federal-court jurisdiction and to justify exercise of the court's remedial

powers on [its] behalf." (internal quotation marks and citation omitted)).

Under this lenient standard, courts have granted standing to, among

others, developers asserting challenges under the FHA against municipal

decisions that present a barrier to developments.  *See, e.g.*, *Lynn v. Vill. of*

*Pomona*, 373 F. Supp. 2d 418, 426-28 (S.D.N.Y. 2005) (finding that real

estate developer has standing where it "suffered economic losses and other hardships as a result of defendant[ village's] allegedly discriminatory application of [a local zoning ordinance]"); *cf., e.g.*, *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 46 n.2 (2d Cir. 2002) (finding that not-for-profit corporation has standing where it "suffered an injury through the denial of its special-use permit application"); *Support Ministries for Persons with AIDS, Inc. v. Vill. of Waterford*, 799 F. Supp. 272, 278 (N.D.N.Y. 1992) (finding that state officials have standing to sue for denial of building permits based on, among other things, the state's economic interest in people with AIDS being placed in residential care facilities rather than medical facilities).

Here, notwithstanding the court's shared concern about whether the Anderson Group actually constitutes an intended beneficiary of the FHA's protections, the court—consistent with its prior rulings, (*see* Oct. 18, 2007 Hr'g Tr. at 12-14, Dkt. No. 128)—is satisfied that the evidence adduced at trial does not undermine, but rather reinforces, the Anderson Group's standing. The testimonial and documentary evidence offered at trial established that the Anderson Group expended time, money, and effort in developing the plans for Spring Run Village, soliciting and receiving

professional services, and preparing and submitting its proposals and

applications to Saratoga.  (*See* Trial Tr. at 175-79, 187, 213-16, 264, 317,

352-55, 368, 565-67, 1284; Pls. Trial Exs. 92, 95, 204, Dkt. Nos. 267:7-9;

*see also* Pls. Trial Exs. 14, 16, 18, 26, Special Use Permit Appls., Dkt. Nos.

267:3-6.)  In addition, Willard Anderson offered testimony that the

Anderson Group suffered some loss of potential profits, income, or fees as

a result of Saratoga's actions.  (*See* Trial Tr. at 296-301, 442.)  Although

the actual value of these losses is subject to considerable

infirmities—which the court will address further below—the quality, or

nature, of these losses is sufficient to give rise to an injury-in-fact under the

FHA.  These economic injuries are fairly traceable to Saratoga's zoning

policies and practices.  And insofar as the Anderson Group was seeking

compensation for these economic injuries, such injuries were redressable

by a favorable decision.

To the extent Saratoga now asserts, or continues to assert, that the

Anderson Group was not authorized under the Saratoga Municipal Code to

apply for a special use permit and, therefore, could not have suffered a

legally cognizable injury, (*see* Def. Mem. of Law at 8-9 n.12, Dkt. No.

262:1), the court considers both halves of this assertion to be flawed.  First,

8

one could arguably infer from Gail Anderson, Willard Anderson, Susan

Touhey, and Gregory Anderson's testimony, (*see* Trial Tr. at 114-15, 146-

47, 165-66, 317-19, 1013, 1036-40), that Gail Anderson, a principal of the

Anderson Group, entered into an oral or implicit agreement with the

Anderson Group and its other principals regarding the ownership of,

dominion over, or development of the Spring Run Village land.  Thus, Gail

Anderson and the Anderson Group's shared interest in and control over the

Spring Run Village land may have qualified the Anderson Group to be an

eligible applicant under the Municipal Code.  Regardless, the Anderson

Group correctly counters that its eligibility as an applicant "is not

determinative of standing" since it "could, and did, establish its personal

stake separate and apart from being the entity named on and submitting

the special use applications."  (Pls. Resp. Mem. of Law at 6-7 n.5, Dkt. No.

267.)  Consequently, the court rejects Saratoga's argument that the

Municipal Code operates to block the Anderson Group's standing.

Saratoga's attempt to make standing conditional on ownership or a written

agreement must be rejected as an overly narrow application of the Article

III standing doctrine in the context of the FHA.  *See Arlington Heights*, 429

U.S. at 261-62; *Huntington Branch, NAACP v. Town of Huntington*, 689

F.2d 391, 394-95 (2d Cir. 1982).

    For these reasons, the court denies the aspect of Saratoga's motion

seeking judgment on the basis of the Anderson Group's lack of standing.

**B.   Consistency of the Verdict**

    Saratoga contests the consistency of the jury's verdict on two bases:

(1) that, aside from damages, the proof did not distinguish between Gail

Anderson and the Anderson Group and so the jury's finding in favor of the

Anderson Group is inconsistent with its finding against Gail Anderson; and

(2) that there is no way to reconcile the jury's finding that Saratoga proved

its governmental interest defense on the Anderson Group's perpetuation of

segregation claim with its finding that Saratoga failed to prove the same

defense on the Anderson Group's disparate impact claim.  (*See* Def. Mem.

of Law at 33-35, Dkt. No. 262:1.)  In response, the Anderson Group asserts

that Saratoga waived its objection as a result of its failure to object to the

verdict when it was rendered and before the jury was discharged.  (*See* Pl.

Resp. Mem. of Law at 41-43, Dkt. No. 267.)  The Anderson Group further

maintains that even if there was no waiver, the jury's findings are capable

of harmonization.  (*See id.* at 43-45.)

    In general, "a party waives its objection to any inconsistency in a jury

10

verdict if it fails to object to the verdict prior to the excusing of the jury."

*Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006) (citations

omitted).  The purpose for requiring a timely objection is "'to give the court

and the opposing party the opportunity to correct an error in the conduct of

the trial,'" which may include "resubmitting the questions to the jury after

some further instruction."[5]  *Id.* at 83-84 (quoting *Barry v. Manglass*, 55

N.Y.2d 803, 805-06 (N.Y. 1981)).  Still, an objection may be treated as

timely where "the inconsistency is not noticed until after the jury has been

dismissed."  *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884,

891 (2d Cir. 1988); *see also Denny v. Ford Motor Co.*, 42 F.3d 106, 110-11

(2d Cir. 1994) (holding that the principles of waiver should be applied on a

case-by-case basis and do not lend themselves to a bright-line rule); *cf.*

*Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir. 1992)

(suggesting that an objection may be timely if it is raised "before the trial

---

[5]In *Cundiff v. Washburn*, the Seventh Circuit outlined in detail the objectives served by a robust waiver doctrine:

> [T]he rule that objection on grounds of inconsistency is waived by failure to move for resubmission promotes the fair and expeditious correction of error.  It requires that the error be corrected in the proceeding in which it is made, by the jury which made it ....  Any other decision would hamper the just and efficient operation of the federal courts.  It would encourage jury-shopping by litigants, permitting them to decide whether to take their chances on resubmitting the verdict and finding to the jury sitting or remain silent thereby allowing the entry of judgment and moving for a new trial before a new jury.

393 F.2d 505, 507 (7th Cir. 1968).

court enter[s] judgment"); *L.A. Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1354-55, 1355 n.3 (9th Cir. 1987) (collecting cases and noting that waiver is more likely found where, prior to dismissing the jury, the district court inquired of the parties about potential inconsistency and counsel gave a misleading answer in order to get the jury dismissed and avoid resubmitting the case); *Schaafsma v. Morin Vt. Corp.*, 802 F.2d 629, 635 (2d Cir. 1986) (holding that even where no objection is made, the trial court has a duty to resolve "double inconsistenc[ies]," i.e., "interrogatory answers which are inconsistent with each other and also inconsistent with the general verdict" (citations omitted)); *Waggoner v. Mosti*, 792 F.2d 595, 596-97 (6th Cir. 1986) (holding that "trial court has no authority to enter judgment" where double inconsistencies are left unresolved (citation omitted)).  For instance, "where the cause of an inconsistent verdict is the jury's misapplication of instructions that are proper," a party's failure to object to the verdict prior to the discharge of the jury may be excusable since "such a verdict could not have been anticipated ex ante."  *Kosmynka*, 462 F.3d at 86 (italics omitted).

        If an objection is deemed untimely, a party may nonetheless challenge an inconsistent verdict "for 'fundamental' error," meaning that the

"error is more egregious than the 'plain' error that can excuse a procedural default ... and is so serious and flagrant that it goes to the very integrity of the trial." *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002) (internal quotation marks and citations omitted); *see, e.g.*, *Perks v. Town of Huntington*, 234 F. App'x 8, 10 (2d Cir. 2007) (applying "fundamental error" analysis to inconsistent verdict challenge).  Along these lines, where a verdict "reflect[s] a lack of understanding upon the part of the jury and show[s] that the jury either returned an erroneous verdict or did not understand [its] duty," a finding of waiver may be unduly harsh—even in the absence of an objection—and the court may treat the jury's verdict as "a nullity under the circumstances and [order] a re-trial of the case upon all issues."  *Cheney v. Moler*, 285 F.2d 116, 118 (10th Cir. 1960); *see also Hopkins v. Coen*, 431 F.2d 1055, 1059 (6th Cir. 1970) ("[W]here verdicts in the same case are inconsistent on their faces, indicating that the jury was either in a state of confusion or abused its power, a motion ... for new trial, or for relief from the judgment, if timely made, is not discretionary." (citations omitted)); *see, e.g.*, *Finnegan v. Fountain*, 915 F.2d 817, 820 (2d Cir. 1990) (ordering a retrial where, "notwithstanding [the] failure of the parties to object or to move before the district court," the jury's verdict that

13

officer used force in good faith was irreconcilable with punitive damages award), *abrogated on other grounds*, *Saucier v. Katz*, 533 U.S. 194, 204 (2001); *but see U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1367 (2d Cir. 1988) (finding waiver where the "jury return[ed] an ambiguous verdict and counsel fail[ed] to seize the opportunity to raise an appropriate objection").

Upon review of a jury's verdict for consistency, "it is the duty of the district court to attempt to harmonize the jury's answers, if it is at all possible under a fair reading of the responses." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers ... consistent, they must be resolved that way."). Thus, "if it is discoverable that the jury 'might' nevertheless have found consistent grounds for its ultimate decision—if the findings, therefore, are not necessarily in conflict—the general verdict must be sustained." *Julien J. Studley, Inc. v. Gulf Oil Corp.*, 407 F.2d 521, 527 (2d Cir. 1969) (internal quotation marks and citations omitted).  But, "if there is no way in which the jury's answers may be harmonized, the court must order a new trial."

14

*LeBlanc-Sternberg*, 67 F.3d at 428 (citation omitted); *see also Schaafsma*, 802 F.2d at 635 ("Only when jury verdicts are logically incompatible is it error for the district court not to grant a new trial." (citations omitted)).  The court, however, may not "simply ... enter a judgment that overrules some of the jury's findings ... [because] proper deference to the parties' Seventh Amendment rights to a jury trial precludes entry of a judgment that disregards any material jury finding."  *LeBlanc-Sternberg*, 67 F.3d at 428 (citations omitted).

At the threshold, the court declines to find waiver in the present circumstances.  The complicated and unique nature of this case and the questions presented made it entirely reasonable, and excusable, for Saratoga not to immediately voice an objection to the verdict's potential inconsistency.  Even the court, upon several reviews, strained to digest the verdict.  Accordingly, anticipating that Saratoga would raise a challenge to the verdict in its Rules 50 and 59 motion papers, the court reserved on all remaining issues, discharged the jury, and deferred the entry of judgment. (*See* Trial Tr. at 2073-74.)  Therefore, because Saratoga's objection presupposes the jury's misapplication of proper instructions, *see Kosmynka*, 462 F.3d at 86, and as there is no basis from which to infer that

15

Saratoga or defense counsel intended to avoid resubmitting the issue to the jury or was otherwise engaging in unwelcome tactics, the court finds that Saratoga's objection to the verdict is timely and subject to review on the merits.[6]

While the parties do not appear to challenge the substance of the jury instructions or the verdict form, the court has nonetheless reviewed the instructions and verdict form, and discerns no erroneous statements or directions that had the potential to confuse or misguide.[7]

Therefore, the fundamental issue is whether it is at all possible to harmonize the jury's answers.  The court concludes that based on the record the jury's findings regarding Saratoga's governmental interest defense cannot be reconciled.[8]  On the verdict form, the jury found that as

---

[6]Even if Saratoga's objection was deemed untimely, the court would nonetheless be obligated to entertain the objection since it implicates a potentially fundamental error regarding the jury's understanding and application of the law which goes to the very integrity of the trial.

[7]To the extent that the Anderson Group seeks to preclude Saratoga from challenging the jury's divergent findings regarding the governmental interest defense based on Saratoga's failure to request that the jury be instructed to make only one finding as to whether it proved its defense, (see Pl. Resp. Mem. of Law at 42, Dkt. No. 267), the court perceives this not as an exception to the instructions and verdict form, but rather as an attempt to frustrate Saratoga's objection.  However, for the same reasons that countenance against a finding of waiver—including the novelty of the case, the complexity of the legal issues, and the unforeseeable jury findings—the court declines to find such preclusion.

[8]The court rejects the first basis for inconsistency advocated by Saratoga—that the evidence could not have allowed for finding in the Anderson Group's favor but not in Gail Anderson's favor—because, as Saratoga itself acknowledges, the Anderson Group's interest or stake in the Spring Run Village project, and consequently its harm or damages, was of a

to the Anderson Group's disparate impact claim, Saratoga failed to prove its conduct furthered a legitimate, bona fide governmental interest and that no alternative action would have served that interest with a less discriminatory impact.  Yet, as to the Anderson Group's perpetuation of segregation claim, the jury found that Saratoga proved that its conduct furthered a legitimate, bona fide governmental interest and that no alternative action would have served that interest with a less discriminatory impact.  There is no view of the facts and law that would make these findings consistent.  *See, e.g.*, *Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc.*, 419 F. Supp. 2d 225, 234 (N.D.N.Y. 2005) (finding that the jury's verdict could not be harmonized where it "essentially was asked the same question twice, but came up with opposite answers").  While disparate impact and perpetuation of segregation were submitted to the jury as separate causes of action, they constitute two types of discriminatory effect.  *See Huntington Branch, NAACP v. Town of Huntington* (*Huntington II*), 844 F.2d 926, 937 (2d Cir. 1988).  And as

---

different quality than Gail Anderson's.  (*See* Def. Mem. of Law at 34, Dkt. No. 262:1 ("[T]he evidence presented at trial, *aside from damages*, did not in any way distinguish between the two [p]laintiffs." (emphasis added)); *see also* Pl. Resp. Mem. of Law at 43-44, Dkt. No. 267 ("One 'fair reading' of the jury's findings related to [the Anderson Group] and Gail Anderson is that the jury concluded that [the Anderson Group], and not Ms. Anderson, was harmed by [Saratoga's] discrimination.").)

Saratoga stresses, "the elements of the [governmental interest] defense are exactly the same under either theory."  (Def. Mem. of Law at 35, Dkt. No. 262:1 (emphasis omitted).)  In fact, even the Anderson Group, in its trial brief, admitted to the universality of the governmental interest defense:

> Once a plaintiff has shown a discriminatory effect *either* through an 'adverse impact' or a 'perpetuation of segregation' analysis, *or both*, the defendant must show that 'its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect.'

(Pl. Trial Br. at 5, Dkt. No. 174 (quoting *Huntington II*, 844 F.2d at 936) (emphasis added).)  Accordingly, the court instructed the jury that "the affirmative defense ... applies in exactly the same way" to both claims, and that if the jury "were satisfied that [Saratoga proved the defense], then [it] would not be liable, so that affirmative defense applies to the second and third claims but not the first."  (Trial Tr. at 2050-51, 2052-53.)  Thus, as neither the law[9] nor the instructions contemplate the jury's disjointed

_____

[9]In a final effort to save the verdict, the Anderson Group relies on *Huntington II* for the proposition that "[i]f the fact-finder concludes that the defendant has [proven the governmental interest defense], the fact-finder must then weigh the plaintiff's showing of adverse impact or perpetuation of segregation against the defendant's showing of a legitimate justification and determine the 'ultimate balance.'"  (Pl. Resp. Mem. of Law at 44, Dkt. No. 267 (quoting *Huntington II*, 844 F.2d at 936).)  This effort must fail, for it does not explain how the balancing act envisioned by the *Huntington II* court would have led the jury to reach different conclusions on the governmental interest defense.  Under *Huntington II*, the additional factors to be considered in evaluating a municipality's governmental interest are (1) "whether there is any evidence of discriminatory intent"; and (2) "whether the plaintiff is suing to compel a

18

application of the governmental interest defense, and because the jury's

disjointed findings are equally unsupported by the evidence, the court has

no choice but to order a retrial.

## C.   <u>Damages</u>

In the alternative, even if the jury's verdict was salvageable, the court

would nonetheless deem the damages award excessive and unsupported

by the evidence.  Specifically, while the jury awarded $1,000,000 in

compensatory damages, the credible evidence on record only supports a

damages amount of $81,000, based on the following: (1) $36,000 paid by

the Anderson Group to the LA Group, as evidenced by a June 15, 2004

invoice sent to Willard Anderson from Michael Ingersoll outlining projected

fees, (*see* Pls. Trial Ex. 92, Dkt. No. 267:7), Willard Anderson's testimony,

(*see* Trial Tr. at 213), and Michael Ingersoll's testimony, (*see id.* at 566); (2)

$14,000 paid by the Anderson Group to Architecture+, as evidenced by

Willard Anderson's testimony, (*see* Trial Tr. at 214), and a July 1, 2004

services agreement signed by Willard Anderson and Joseph Lomonaco,

---

governmental defendant to build housing or only to require a governmental defendant to
eliminate some obstacle to housing that the plaintiff itself will build."  844 F.2d at 936.  Here,
the first factor was not in play in light of both the absence of evidence showing discriminatory
intent and the jury's finding of no liability on the disparate treatment causes of action.  And as
to the second factor, the court is at a loss as to how the weight of that factor would have been
different in the contexts of the disparate impact and perpetuation of segregation claims.

(*see* Pls. Trial Ex. 95, Dkt. No. 267:8); (3) $23,500 paid by the Anderson

Group to the Chazen Companies and Whiteman, Osterman & Hanna,

which Willard Anderson testified to, (*see* Trial Tr. at 215); (4) $5,500 paid

by the Anderson Group to Creighton Manning, which Willard Anderson

testified to, (*see id.* at 216); and (5) $2,000 in application fees, as

evidenced by the special use permit applications, (*see* Pls. Trial Exs. 14,

16, 18, 26, Dkt. Nos. 267:3-6), and Willard Anderson's testimony, (*see* Trial

Tr. at 264).  The only other actual dollar amount put into proof was Willard

Anderson's identification of $900,000 as an anticipated developer fee that

the Anderson Group expected to realize from the Spring Run Valley

project.  (*See id.* at 442.)  However, unlike the losses that make up the

$81,000 amount, the $900,000 was based on pure speculation—as Willard

Anderson's testimony itself demonstrates—and was wholly unsubstantiated

by any other testimonial or documentary evidence.  Moreover, the evidence

overwhelmingly established that the Anderson Group made no attempt to

adapt its project or otherwise mitigate its potential losses.  And insofar as

the Anderson Group posits harm to its reputation as an additional basis for

the jury's damages award, the record contains nothing more than passing

references to and conjecture about the Anderson Group's reputation.  (*See*

*id.* at 137 ("Well, I guess our reputation [was affected]."), 302 ("We were ...

called schoolyard bullies[,] ... told that we didn't have any brains[, and] ...

villified in the press throughout [the] entire process."), 1278 ("There were

numerous allegations about our intent and specifically in building the

affordable portion of the project saying it was just a carrot or a smoke

screen ...."), 1279 ("[I]n one case we had received a letter ... letting us

know that people are calling into question our good name."); *see also* Pls.

Trial Ex. 28, Bristol-Lynch Emails, Dkt. No. 267:10.)

Faced with the fact that the jury's award was clearly excessive and

against the weight of the evidence, the court has three options: "it may

order a new trial, a new trial limited to damages, or, ... condition a denial of

[Saratoga's] motion for a new trial on the [Anderson Group's] accept[ance

of] damages in a reduced amount." *Tingley Sys., Inc. v. Norse Sys., Inc.*,

49 F.3d 93, 96 (2d Cir. 1995) (citation omitted).  Under the third option,

which is called "remittitur," the court may "compel[ the Anderson Group] to

choose between reduction of [the] excessive verdict and a new trial." *Earl

v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1328 (2d Cir. 1990) (internal

quotation marks and citation omitted); *see also Tingley*, 49 F.3d at 96 ("It is

not among the powers of the trial court, where the jury has awarded

21

excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial." (citation omitted)).  Importantly, in calculating the remittitur, the court must use the "least intrusive"—and "most faithful to the jury's verdict"—method of "reduc[ing] the verdict only to the maximum that would be upheld by the trial court as not excessive." *Earl*, 917 F.2d at 1328-30.

A new trial on damages is implicit in the court's primary ruling that the Anderson Group's disparate impact and perpetuation of segregation claims must be submitted to a new trial.  However, if this ruling ultimately fails to withstand scrutiny, the court proposes a remittitur, pursuant to which Saratoga's motion for a new trial would be denied on the condition that the Anderson Group accept a reduced damages amount of $81,000.

## IV.  Conclusion

In closing, having found that a new trial is warranted and necessary due to the inconsistency of the verdict, and in light of the court's additional observations regarding damages, the court declines to address any other aspects of Saratoga's motion.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Saratoga's motion for a new trial is **GRANTED** on the

Anderson Group's disparate impact and perpetuation of segregation claims; and it is further

ORDERED that, in the alternative, Saratoga's motion for a new trial on damages is DENIED on the condition that the Anderson Group accepts a REMITTITUR of the damages award to $81,000; and it is further

ORDERED that Saratoga's motion is otherwise DENIED; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

IT IS SO ORDERED.

June 21, 2011
Albany, New York

_____
United States District Court Judge