**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THE ANDERSON GROUP, LLC**
and **GAIL ANDERSON**,

                      Plaintiffs,            1:05-cv-1369
                                                      (GLS)

        v.

**CITY OF SARATOGA**
**SPRINGS et al.**,

                      Defendants.
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Relman, Dane Law Firm         JOHN P. RELMAN, ESQ.
1225 19th Street, N.W.          REED N. COLFAX, ESQ.
Suite 600                         TARA K. RAMCHANDI, ESQ.
Washington, DC 20036         JAMIE L. CROOK, ESQ.

Lynch, Farrell Law Firm         PETER A. LYNCH, ESQ.
111 State St.
Albany, NY 12207

**FOR THE DEFENDANTS:**
Lemire, Johnson Law Firm      GREGG T. JOHNSON, ESQ.
P.O. Box 2485                  MARY ELIZABETH KISSANE, ESQ.
2534 Route 9                  TIMOTHY J. HIGGINS, ESQ.
Malta, NY 12020

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction[1]

Plaintiffs Gail Anderson and the Anderson Group, LLC (collectively "TAG") commenced this action against defendant City of Saratoga Springs,[2] alleging claims under the Fair Housing Act (FHA)[3] for disparate treatment and disparate impact. Following a nine-day jury trial in June 2010, the jury returned a verdict in favor of Saratoga with respect to all but one of the Anderson Group's claims for disparate impact. (*See* Dkt. No. 237.)  Though the jury initially awarded the Anderson Group compensatory damages, (*see id.* at 7), Saratoga moved for, *inter alia*, a new trial. (*See* Dkt. No. 262.)  In a Memorandum-Decision and Order dated June 21, 2011, the court granted Saratoga's motion and ordered a new trial on only the Anderson Group's disparate impact claim. (*See* Dkt. Nos. 278, 310.)

Following a second trial in August 2012, the jury found that the Anderson Group failed to prove its claim and returned a verdict in favor of

---

[1] Although both parties filed appeals, (*see* Dkt. Nos. 354, 358), the court maintains residual jurisdiction over collateral matters such as attorneys' fees and costs.  *See Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004).

[2] On June 29, 2010, pursuant to an agreement reached by the parties, the court ordered the dismissal of all claims against the individual defendants. (*See* Dkt. No. 232.)

[3] 42 U.S.C. §§ 3601-3631.

2

Saratoga.  (*See* Dkt. No. 348.)  After the court entered judgment, Saratoga sought, and the Clerk taxed, costs against TAG in the amount of $143,071.86.  (*See* Dkt. Nos. 353, 355, 362.)  Pending is TAG's motion for a review of the Clerk's taxation of costs and Saratoga's motion for attorneys' fees.  (*See* Dkt. Nos. 366, 370.)  For the reasons that follow, TAG's motion is granted, and Saratoga's motion is denied.

## II. Legal Standards

### A. Costs under 28 U.S.C. § 1920

Federal Rule of Civil Procedure 54(d)(1) authorizes the recovery of costs by a prevailing party "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise."  Recoverable costs are limited to those enumerated in 28 U.S.C. § 1920.  *Whitfield v. Scully*, 241 F.3d 264, 269-70 (2d Cir. 2001) (citing *Crawford Fitting Co. v. J.T.Gibbons, Inc.*, 482 U.S. 437, 441 (1987)).  "[B]ecause Rule 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation," thereby placing on the losing party the "burden to show that costs should not be imposed."  *Whitfield*, 241 F.3d at 270 (quoting *Mercy v. Cnty. of Suffolk*, 748 F.2d 52, 54 (2d Cir. 1984)).  Where a bill of costs is challenged, the reviewing district court exercises

3

discretion and "decide[s] the cost question [it]self."  *Whitfield*, 241 F.3d at 269 (internal quotation marks and citation omitted).

## B.   Attorneys' Fees and Costs

Generally, the so-called "American Rule" mandates "each party to bear his own litigation expenses, including attorney[s'] fees, regardless whether he wins or loses."  *See Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011).[4]  However, Congress has enacted fee shifting provisions which permit a prevailing party to recoup costs from its adversary in certain types of cases.  *See id.* (citing *Burlington v. Dague*, 505 U.S. 557, 562 (1992)).  To this end, 42 U.S.C. § 3613(c)(2) authorizes courts to award "a reasonable attorney[s'] fee and costs" to the prevailing party in any action brought under the FHA.  *See*  42 U.S.C. § 3613(a), (c)(2).  Although available to both parties, attorneys' fees may only be awarded to a defendant if either the entirety, or a part, of the "plaintiff's action was frivolous, unreasonable, or without foundation."  *Fox*, 131 S. Ct. at 2213 (internal quotation marks and citations omitted); *accord Taylor v. Harbour Pointe Homeowners Assoc.*, 690 F.3d 44, 50 (2d Cir. 2012) .  In making this determination, and

---

[4]  Courts apply the same standard for awarding fees and costs to a prevailing defendant under sections 1988 and 3613(c)(2).  *See Taylor v. Harbour Pointe Homeowners Assoc.*, 690 F.3d 44, 50 (2d Cir. 2012) (applying the Supreme Court's test for attorneys' fees and costs under 42 U.S.C. § 1988 in an FHA case).

4

thereafter calculating the reasonable fee, trial courts are granted "substantial deference." *Fox*, 131 S. Ct. at 2216. "[R]ough justice," and not "auditing perfection" is the goal of the fee shifting provision. *Id.* Thus, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

### III. Discussion

As a threshold matter, it is undisputed that Saratoga was the prevailing party, and as such, is entitled to, at a minimum, costs under Federal Rule of Civil Procedure 54(d)(1). (*See* Dkt. No. 366, Attach. 2 at 3.) The question here is how much Saratoga can recover. TAG argues that the Clerk not only taxed impermissible or unsubstantiated costs, but also that Saratoga can only recover limited costs under section 1920. (*See generally* Dkt. No. 366, Attach. 2; Dkt. No. 372.) Conversely, Saratoga asserts that TAG's disparate treatment claims were frivolous, and thus, the broader scheme of attorneys' fees and costs under section 3613 controls. (*See generally* Dkt. No. 368; Dkt. No. 370, Attach. 10.) Although these issues were asserted in separate motions, the instant dispute hinges on the answer to the following questions: (1) were any, or all, of TAG's claims "frivolous, unreasonable, or without foundation"; and, if so, (2) is it possible

5

to discern the fees and costs Saratoga expended on defending against only those claims. Accordingly, before determining what costs Saratoga is entitled to, the court must first resolve the issue of frivolity.

## A.   Frivolity of TAG's Claims

Saratoga focuses its frivolity argument on TAG's disparate treatment claims, asserting that there was never "any evidence of intentional discrimination." (Dkt. No. 370, Attach. 10 at 9.) Citing, among other things, TAG's financial capabilities,[5] Saratoga further avers that TAG should not be shielded by the higher standard for awarding fees and costs to a prevailing defendant under 42 U.S.C. § 1988. (*See id.* at 6-8.) In response, TAG asserts that the procedural history of this case—specifically, the fact its disparate treatment claims survived multiple dispositive motions—negates Saratoga's argument. (*See* Dkt. No. 372 at 6-9.) Alternatively, TAG argues that Saratoga's inability to identify the time it expended on defending against only the disparate treatment claims is fatal to its motion. (*See id.* at 15-17.) The court agrees with TAG.

Irrespective of whether TAG is the typical FHA plaintiff—a point which

---

[5] For example, Saratoga notes that TAG not only brought two prior state court actions through local counsel, but it also retained a second law firm—to whom it agreed to pay in excess of $1.25 million as of December 2010—to prosecute this case. (*See* Dkt. No. 370, Attach. 10 at 6-8.)

6

is particularly well-stated in this context—there is a different standard for awarding fees to a prevailing defendant. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 769 (2d Cir. 1998). In short, "unless the plaintiff's action was 'frivolous, unreasonable, or groundless, . . . or the plaintiff continued to litigate after it clearly became so,'" there is no basis to award fees to a prevailing defendant. *Id.* (quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 422 (1978)). Here, the court, having previously determined that TAG "must be allowed to litigate" its claims, is hard pressed to find otherwise now. *Id.* at 770-71 (explaining that "[c]ertain types of judicial rulings strongly indicate that a plaintiff's claim should not be deemed frivolous, groundless, or unreasonable"). Indeed, TAG's disparate treatment claims not only survived motions under Federal Rules of Civil Procedure 12(c) and 56, but were also submitted to the jury in spite of Saratoga's Rule 50(a) motion at the close of TAG's case-in-chief. (*See, e.g.*, Dkt. No. 372 at 8-9.)

Yet even if the disparate treatment claims were frivolous, Saratoga still could not recover fees because it did not—and arguably could not—identify the fees that resulted from defending against only the supposedly-frivolous claim. To explain, "[s]ection 1988 allows a defendant

7

to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim." *Fox*, 131 S. Ct. at 2215. Where a "defendant would have incurred those fees anyway, to defend against *non*-frivolous claims, then a court has no basis for transferring the expense to the plaintiff." *Id.* That is precisely the case here insofar as Saratoga conceded, by limiting the scope of its motion, that TAG's disparate impact claims were not frivolous. (*See generally* Dkt. No. 372.) Necessarily then, it must prove that the disparate treatment claims were frivolous, and then identify those fees that it "would not have paid but for the frivolous claim[s]." *Fox*, 131 S. Ct. at 2215. Saratoga made no attempt to do so. (*See generally* Dkt. Nos. 370, 372.) As such, its motion for fees under 42 U.S.C. § 3613 is denied. It follows that Saratoga is only entitled to the limited costs enumerated in 28 U.S.C. § 1920.

**B.     Permissible Costs**

TAG argues that the Clerk improperly taxed costs for "computer research, postage, delivery services, counsel's travel expenses, expert witness fees," and a non-recoverable court filing fee. (Dkt. No. 366, Attach. 2 at 4-8.) Furthermore, TAG asserts that Saratoga has offered inadequate justification for its stenographic, printing and duplication costs. (*See id.* at

8

8-11.) In response, Saratoga avers that transcription and duplication costs were "necessarily incurred," and that it should be reimbursed for its witnesses' travel costs. (Dkt. No. 368 at 3-8.) Setting aside its argument for costs under section 3613, Saratoga does not contest that several taxed costs are impermissible under section 1920. (*See generally id.*) Having discerned no substantive dispute on the controlling law, a summary discussion of Saratoga's costs will suffice.

In its Bill of Costs, Saratoga sought, and the Clerk taxed, the following costs: (1) Fees of the Clerk in the amount of $910.00; (2) PACER charges in the amount of $163.18; (3) postage in the amount of $220.06; (4) delivery services in the amount of $151.42; and (5) attorney travel expenses in the amount of $1430.45. (*See* Dkt. No. 362 at 1, 3, 5.) Each of these costs, however, is—as TAG notes—improper under 28 U.S.C. § 1920. (*See* Dkt. No. 366, Attach. 2 at 5-8.) The $118,831.09 in expert fees Saratoga submitted must also be reduced because the experts were not "court appointed." 28 U.S.C. § 1920(6); (*see* Dkt. No. 362 at 5.) Of that sum, Saratoga may recover $160, which represents $40 per day in witness fees for the four days listed in its application. (*See* Dkt. No. 362 at 32, 33, 34-35, 39); 28 U.S.C. §§ 1821(b), 1920(3). It is also entitled to,

9

notwithstanding TAG's claim that the costs are insufficiently documented, (*see* Dkt. No. 366, Attach. 2 at 7-8), $303.65 for Dr. Allen Parnell's July 25, 2012 travel expenses, (*see* Dkt. No. 362 at 39-40), and $104.00 for Dr. William Fairley's hotel accommodation on August 8, 2012, (*see id.* at 41; Dkt. No. 366, Attach. 3 at 7).  *See* 28 U.S.C. § 1821(c)(1)-(3), (d)(1).  Thus, with the exception of additional amounts for expert witness travel, the court concurs with TAG's unopposed accounting of these categories of costs. (*See* Dkt. No. 366, Attach. 3 ¶ 8; Dkt. No. 368 at 3-8.)

Turning to Saratoga's request for $10,394.31 in transcription costs and $10,828.20 for printing, TAG argues that Saratoga failed to show that these costs were necessary, and moreover, submitted insufficient documentation to support the amounts taxed.  (*See* Dkt. No. 366, Attach. 2 at 8-11.)  Simply put, the court, by and large, disagrees.[6]  Section 1920 permits taxation for "[f]ees and disbursements for printing," as well as "[f]ees for exemplification and the costs of making copies of any materials

---

[6] TAG notes that two of the transcription invoices include charges for shipping and handling which are not recoverable.  (*See* Dkt. No. 366, Attach. 2 at 11); *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933 (2d Cir. 1987) (noting that postage is not a litigation cost under section 1920).  Thus, the $43.00 in shipping charges must be deducted.  (*See* Dkt. No. 362 at 9, 16.)  However, the court is unpersuaded that the additional charges TAG takes exception with—that is, the supplies on receipts from Staples and the like—are inappropriate, (*see id.* at 10-11), as 28 U.S.C. § 1920(4) allows for "[f]ees for exemplification."

10

where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(3)-(4). The documentation provided by the prevailing party "must simply be the 'best breakdown obtainable from retained records.'" *McGuigan v. CAE Link Corp.*, 155 F.R.D. 31, 36 (N.D.N.Y. 1994) (quoting *Northbrook Excess & Surplus Ins. Co., v. Proctor & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991)). While Saratoga does not provide a line-by-line explanation of each cost, the Addendum to the Bill of Costs, along with the affidavit of Gregg Johnson, are sufficient, in this case, to justify the costs taxed.[7] (*See* Dkt. No. 355, Attach. 1; Dkt. No. 362.) Accordingly, Saratoga's transcription and printing fees need only be reduced by $43.00, the amount of the unrecoverable shipping and handling charges.

In sum, Saratoga's Bill of Costs is reduced as follows: $0 for Fees of the clerk, PACER charges, Postage, Delivery services and attorney travel expenses; $10,351.31 in transcription fees; $10,828.30 in printing fees; $143.15 in witness fees; and $710.80 in expert fees. It follows that the Clerk is directed to vacate Saratoga's Bill of Costs, and to enter judgment for Saratoga for costs in the amount of $22,033.56.

---

[7] Notably, TAG's own Bill of Costs contained far less documentation. (*See* Dkt. No. 272.)

11

## IV. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Saratoga's motion for attorneys' fees (Dkt. No. 370) is **DENIED**; and it is further

**ORDERED** that TAG's motion for a review of the Clerk's taxation of costs (Dkt. No. 366) is **GRANTED**; and it is further

**ORDERED** that the Clerk is directed to vacate Saratoga's Bill of Costs (Dkt. No. 362), and to enter judgment for Saratoga for costs in the amount of $22,033.56; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 15, 2013
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court